UNITED STATES of America

v.

RECOGNITION EQUIPMENT, INCOR-
PORATED, William G. Moore, Jr.,
Robert W. Reedy.

Crim. No. 88–0385.

United States District Court,
District of Columbia.

April 6, 1989.

Joseph B. Valder, Asst. U.S. Atty., Crim. Div., Washington, D.C., for U.S.

John P. Cooney, Julie R. O'Sullivan, Davis, Polk & Wardwell, New York City, Linda Chatman Thompson, Davis, Polk & Wardwell, Washington, D.C., Morris Harrell, Marshall Searcy, Lori B. Finkelston, Locke Purnell Rain Harrell, Dallas, Tex., for REI.

Charles A. Stillman, Andrew M. Luger, Marjorie J. Peerce, Stillman, Friedman & Shaw, New York City, for Moore.

Robert S. Bennett, David S. Krakoff, Dunnells, Duvall, Bennett & Porter, Washington, D.C., for Reedy.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

Defendants are alleged to have participated in a complex criminal conspiracy designed to cause the United States Postal Service ("USPS") to award them a contract to supply optical character reading equipment for use in sorting the mail. Defendants Moore and Reedy were executives of the corporate defendant, Recognition Equipment, Incorporated ("REI"). Other members of the alleged conspiracy were

**4**

members of the public relations firm of Gnau and Associates, Inc., ("GAI"), and Peter E. Voss, a former member of the Board of Governors of the United States Postal Service. The indictment alleges that the conspiracy included, among other things, a "kickback" arrangement whereby defendants paid GAI for lobbying services, and GAI in turn paid Voss for illegal actions on REI's behalf while he was serving on the Board of Governors. Other allegations in the indictment include a scheme to replace the Postmaster General with an individual sympathetic to REI, theft of property belonging to the Postal Service, mail and wire fraud, and four conspiratorial objects alleging corruption of Postal Service operations.

Oral argument on the motions discussed below was heard on March 7th and 8th, 1989. In this memorandum, the Court denies defendants' motion to dismiss Count I of the indictment, grants in part defendants' motion for a bill of particulars, denies defendants' motion to discover the Grand Jury transcript, and grants in part defendants' motion for discovery.

*I. Defendants' Motion to Dismiss Count I*

 Defendants are charged in Count I of the indictment with violation of 18 U.S.C. § 371 which reads in part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Defendants have moved to dismiss Count I on the grounds that it is confusing and duplicitous, improperly charges offenses under both prongs of 18 U.S.C. § 371, seeks to impose criminal liability for conduct not plainly in violation of statute, and improperly alleges two separate conspiracies in a single count. The Court will address each of these arguments in turn.

A. Defendants argue that Count I is so confusing and duplicitous as to violate the requirement of Fed.R.Crim.P. 7(c) that an indictment "shall be a plain, concise and definite statement of the essential facts constituting the offense charged." This, they argue, is because Count I fails to provide defendants with adequate notice of the charges against them, fails to delineate the scope of the alleged conspiracy clearly, would hinder proper evidentiary rulings at trial, and would make it impossible to verify whether there had been a unanimous jury verdict.

After hearing extensive oral argument on these points, the Court finds that the government has successfully demonstrated that the conspiracy alleged under § 371 is described with sufficient detail to apprise defendants of what they must be prepared to defend pursuant to the requirements of Rule 7(c). The indictment alleges some 96 overt acts, and the conclusions the government draws from them are spelled out as the ten alleged conspiratorial objects. The indictment alleges that various "means and methods" were used in furtherance of the § 371 conspiracy, but the fact that vague means are alleged does not mean that the nature of the conspiracy is improperly alleged, because § 371 places no limitation on the "methods" which may be used to defraud the United States. *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 2752, 97 L.Ed.2d 90 (1987). Since the Court could not dismiss Count I on the grounds that the government had failed to allege means necessary to state a violation of § 371 there are no grounds to dismiss because the listed "means and methods" are laid out vaguely. The indictment does state the essential elements of the offense, does allege at least one overt act in furtherance of the conspiracy, and therefore serves to apprise defendants of what they must be prepared to defend. *See United States v. Treadwell*, 760 F.2d 327, 337 (D.C.Cir.1985), *cert. denied*, 474 U.S. 1064, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). No further allegations are required in a § 371 indictment. *United States v. Tarvers*, 833 F.2d 1068, 1075 (1st Cir.1987) (holding that the essential elements of a § 371 indict-

ment are an agreement to pursue an unlawful object accompanied by an overt act in furtherance of the agreement).

■ The indictment puts defendants on notice that they must be prepared to defend actions allegedly taken in furtherance of a conspiracy to subvert the Postal Service's procurement process. An indictment alleging a § 371 conspiracy is sufficient if it describes the essential nature of the conspiratorial agreement and sets forth the essential elements of the offense. *Treadwell*, 760 F.2d at 337. In this case, the indictment describes the governmental functions defendants are alleged to have conspired to impede (Indictment ¶ 12a-e). It also sets forth the essential nature of the conspiracy in paragraph 13, detailing the alleged scheme by means of which the procurement process was impeded. Paragraph 13 also alleges that the defendants knew of the activities of the other co-conspirators. Further detail is provided by paragraph 14, which lists 96 overt acts. The Court finds that this level of detail suffices to satisfy the requirements of Rule 7(c) and *Treadwell.*

The defendants have also argued (relying on the vagueness of the list of "means" and of the indictment generally) (1) that the grand jury may not have found probable cause to support each element of the offense; (2) that they cannot discern the government's legal theory; (3) that it would be difficult to ensure a unanimous jury verdict; and (4) that the Court may have a hard time drafting instructions and making evidentiary rulings.

■ Following each alleged "object" in the indictment is a "means" clause, including "cheating, deceit, fraud, theft, embezzlement, dishonesty," and so forth, which tracks the language of the cases interpreting the "fraud prong" of § 371, but has no obvious connection with many of the overt acts. Defendants have argued that the "means" clause is so vague as to show that the Grand Jury may not have found probable cause as to each element of the offense. The government points out that defendants have no right to complain about the vagueness or notice failings of this language in the indictment, since indictments do not require a "means" explanation at all. The essential elements of a § 371 offense are (1) an agreement (2) one or more unlawful objects and (3) an overt act in furtherance of the agreement. *United States v. Tarvers,* 833 F.2d 1068, 1075 (1st Cir.1987). As stated earlier, § 371 does not require any particular means or methods to be used, and therefore, means and methods are not an essential element of a properly framed § 371 indictment.

In the *Treadwell* case cited above, it was held sufficient under § 371 for an indictment to track the language of the statute and contain sufficient facts to describe the essential nature of the conspiratorial agreement. This Count I certainly does, and would even if the "means" language were omitted. It sets forth the multiple objects of the conspiracy, and describes the essential nature of the agreement in the "objects" paragraphs, which describe which governmental functions defendants allegedly agreed to impede. The "means" list is not surplus, since it is clearly intended to link each object to the standards of § 371. Since it tracks the elements of § 371, which is an independent offense not requiring a showing that any specific statute has been violated, the "means" list does not have to describe the specific elements of any substantive offense other than § 371.

■ (1) Defendants have argued that the vagueness of the allegations makes it impossible to be certain whether the Grand Jury found probable cause. The Court thinks this issue has been raised too early, since it is not clear whether the government will, or will not be able to show a single conspiracy. The cases cited by defendants were cases where a single count contained multiple conspiracies. In such a case, the trial court is faced with trying to excise a duplicitous charge, and in the cases cited by the defendants, the indictments were unclear as to whether the grand jury had found probable cause to indict on the separate conspiracies. See, *e.g., United States v. Cryan,* 490 F.Supp. 1234, (D.N.J.), *aff'd,* 636 F.2d 1211 (3d Cir. 1980). In *Cryan,* the government's case as

developed *at trial* failed to show any evidence that the defendants knew enough about a pre-existing conspiracy between some of the same persons to argue effectively that only one conspiracy was alleged in the indictment. When the trial court in *Cryan* learned that there would be a complete failure of proof as to knowledge of the pre-existing conspiracy which the defendants were alleged to have joined, the court found that it could not determine whether the Grand Jury would have indicted on the basis of the later transactions in which the defendants were involved. Therefore, the court decided that it would be improper simply to excise that portion of the indictment which depended on the defendants having joined a larger, older conspiracy. To have done so would have forced the court to second guess the Grand Jury on whether it would have indicted had the more recent conspiracy been the only one placed before it. The court was also concerned that evidence about the pre-existing conspiracy would prejudice the defendants in the eyes of the jury since there was no evidence that the defendants knew about it. *Cryan* did not hold that a court should look behind the indictment to the Grand Jury's findings before any evidence has been presented. The *Cryan* situation has not been reached in this case, since the government has alleged, both in the indictment, and during oral argument, that it will make a circumstantial case that defendants knew about the doings of the unindicted co-conspirators. The government has alleged knowledge on defendants' part of all aspects of the conspiracy, and must be allowed to attempt to prove it.

(2) Although defendants have complained that the indictment does not particularize the government's legal theories, in the sense that the "means" list fails to specify how the overt acts furthered violation of § 371, defendants have no right to know what legal theories the government will use to make the link between the overt acts and the ten conspiratorial objects. *United States v. Shoher*, 555 F.Supp. 346 (S.D.N.Y.1983). Therefore, failure to draft the indictment in such a way as to reveal those theories is not a flaw in the indictment.

(3) As to the difficulty the Court will have in making rulings, the defendants argue that Count I should be dismissed because the "means" clause will make it difficult for the Court to draft jury instructions, ensure a unanimous verdict, and make evidentiary rulings. Given the complexity of the charges, the only way in which the Court would allow this indictment to go to the jury would be with a special verdict form, which the Court believes overcomes defendants' objection that the multiplicity of objects afforded by the indictment might make a compromise verdict possible. Where an indictment alleges a conspiracy to commit several offenses against the United States, the charge is sustained by proof of conspiracy to commit any one of the offenses. *United States v. Alvarez*, 735 F.2d 461 (11th Cir.1984). A properly drawn special verdict form would alleviate the problem of ensuring unanimity.

(4) With respect to evidence, Count I defines the relevant time period, identifies the corrupted procurement process, identifies co-conspirators and sets forth in detail the nature of the scheme. But, recognizing the force of defendant's argument, and since the Court understands defendants' objection that Count I seeks to criminalize activities which, taken individually, are not criminal violations, the Court emphasizes the importance it attaches to the government's ability to show *agreement*, which is the *sine qua non* of the law of conspiracy, and *intentional impairment* or *obstruction* of the lawful functions of the USPS. At oral argument, the government argued that knowing participation in any one of the listed objects would be sufficient for conviction under § 371, and that it was not necessary for the government to prove defendants' knowledge of the prior Voss–Gnau corruption in order to convict' defendants of, for example, conspiracy to effect the theft, or illegal

receipt of USPS property.[1] The Court reminds the government that evidence on any given object is not the same as showing a conspiracy with the intent of impairing the integrity, or impeding the lawful functions, of the USPS, and that the government's evidence at trial will be admitted and evaluated with that showing in mind.[2]

B. Defendants argue that Count I is duplicitous, since it charges violations of both clauses of § 371, *i.e.,* conspiracy to commit an offense against the United States *and* conspiracy to defraud the United States. Defendants argue that a count which alleges violation of both clauses of § 371 violates Rule 8(a) because it charges two separate offenses. The government has argued, correctly, that a conspiracy is a single offense no matter how many objects it encompasses, *May v. United States,* 175 F.2d 994 (D.C.Cir.), *cert. denied,* 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949), and that, accordingly, a violation of both prongs of § 371 may be alleged in a single count of an indictment without charging more than one offense. Since the law of conspiracy allows for schemes with more than one object, the fact that a count may allege conspiracy *both* to commit offenses against the United States *and* to defraud the United States does not necessarily make that count duplicitous. *Treadwell,* 760 F.2d at 335–36.

Duplicity is the joining of two or more *offenses* in a single count. It is clear, however, that a count charging conspiracy may contain several conspiratorial *objects* while remaining one offense. Thus, according to the Supreme Court, "the allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'the conspiracy is the crime, and that is one, however diverse its objects.'" *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (quoting *Frohwerk v. United States,* 249 U.S. 204, 39 S.Ct. 249, 63 L.Ed. 561 (1919)). The D.C. Circuit has specifically held that a "multiplicity of objects or of means" fails to convert a single conspiracy into more than one offense. *May v. United States,* 175 F.2d at 1002. Although § 371 is phrased as if it contained two separate offenses, *May* held that this is not so, since the conspiracy is the crime charged, and that is one offense, however diverse its objects. The same argument defendants make here was made in *Treadwell,* 760 F.2d at 334–35, and the Court of Appeals again held that under *Braverman,* the "gist of the crime of conspiracy as defined by the statute is the agreement or confederation of the conspirators," and that it is the agreement which the statute punishes, although a single agreement may have multiple objects. "Thus, a single conspiracy may contemplate ... the violation of one or more federal statutes in addition to defrauding the United States." *Treadwell* at 336. The Court concludes that both prongs of § 371 may coexist within a single count.

C. The defendants have also argued that the indictment is flawed insofar as it seeks to criminalize innocent lobbying activities. The government responds by arguing that conspiracy to defraud the United States can mean a conspiracy to deprive the United States of its right to conduct its

---

1. Whether the indictment might then turn out to have alleged more than one conspiracy, as in the *Cryan* case discussed above, would depend on the evidence available, and cannot be decided before the government's case has been presented. But the Court notes the possibility that a failure of proof on the government's part with respect to these defendants' awareness of the pre-existing Voss–Gnau arrangement might break the conspiracy into fragments, *e.g.,* a conspiracy between Voss and Gnau to corruptly influence USPS activity, a conspiracy between Voss, Gnau, these defendants and others to steal USPS property, and so forth. It would also be possible for the evidence to show that defendants did join some kind of conspiracy closely enough related to the pre-existing one to avoid breaking up into more than one conspiracy. The Court reiterates that this point cannot be decided until the government has presented its evidence with respect to the degree of defendants' involvement in the pre-existing conspiracy they are alleged to have joined.

2. The Court is aware, however, that whether there is sufficient evidence to show a defendant's knowledge of a conspiracy is a question of fact for the jury to decide. *See, e.g., United States v. Anderson,* 574 F.2d 1347 (5th Cir.1978). The Court merely indicates its concern for the adequacy of evidence required to allow that issue to go to the jury.

business free from deceit, fraud, misrepresentation, cheating, theft, etc., and does not necessarily mean conspiracy to violate a particular criminal statute. It is well settled that the term "defraud" in § 371 is not confined to common-law fraud, under *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). In a recent case, the Supreme Court stated that a § 371 conspiracy embraces "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 2751, 97 L.Ed.2d 90 (1987). Accordingly, § 371 embraces not only schemes which deprive the government of money or property in violation of statute, but also those which affect the integrity of the United States and its agencies by means of deceit, craft or trickery, or by means that are at least dishonest. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2881 n. 8, 97 L.Ed.2d 292 (1987). In *United States v. Haldeman*, 559 F.2d 31 at 122 (D.C.Cir. 1976), it was said that § 371 makes a crime out of an agreement which "means to deprive the Government of its right to have the officials of its departments and agencies transact their official business honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty and obstruction." Thus, "it has long been accepted that 18 U.S.C. § 371 defines a substantive crime," *United States v. Gallup*, 812 F.2d 1271, 1276 (10th Cir.1987), and that "to be held liable under the broad sweep of the fraud prong of § 371, defendants need not have agreed to commit, or have actually committed, a specific substantive offense. They merely must have agreed to interfere with or to obstruct one of the government's lawful functions." *United States v. Nersesian*, 824 F.2d 1294, 1313 (2d Cir.1987).

■ The indictment contains six objects which constitute specific "offenses against the United States," and also contains four objects which track the "fuzzy" nature of the "defraud" prong as developed in the case law interpreting § 371, since they do not allege violations of separate criminal statutes, and rely on § 371 to criminalize those objects by its own force. Although the cases say that § 371 is designed to criminalize acts which deprive the right of the government to the proper functioning of its agencies and procurement processes, the Court is troubled by the prospect that the jury could convict these defendants for influencing a procurement by acts which do not rise, legally, to the level of corruption as forbidden by statute.

The government stated at oral argument that a conviction under the four "defraud" objects would lie despite acquittal on the six "offense" objects. Whether this is the case will have to be determined upon the sufficiency of the government's evidence at trial. The Court intends to scrutinize the proofs offered at trial carefully to determine the sufficiency of evidence regarding deceit, craft, trickery and dishonesty on the part of these defendants. *See United States v. Tarnopol*, 561 F.2d 466, 474–75 (3d Cir.1977). Although the Court has concluded that the four objects in Count I which are geared toward the "fraud prong" are legally sufficient under the cases interpreting § 371, the Court recognizes their relative vagueness and will insist upon an explicit showing at trial.

While it is said in *Tanner*, 107 S.Ct. at 2751, that § 371 embraces any conspiracy to impede the "lawful function" of a government agency, the Court believes that the key word there is "lawful." If an agency shows signs of bias, or influence is brought to bear upon it by means of lobbying, the agency is not functioning ideally, but it could well be functioning "lawfully," until the outside influences brought to bear upon it become so overreaching as to violate a statute, or at the least, so as to truly *impede* the lawful functioning of the agency. If the process is to be protected by the criminal law at any earlier stage of influence, lobbying, etc., the Court cannot see how potential defendants are to be put on notice that their conduct is unlawful unless a showing is made that the defendants *intended to impair or obstruct*, rather than lawfully influence, the functioning of government. Nonetheless, the Court finds (*per* precedent) that § 371 creates its own

"substantive" offense, independent of any other statutory violation. Thus, it appears theoretically possible for conduct which fails to violate the statutes listed in the six "offense prong" conspiratorial objects to violate the "fraud prong" so long as the defendants are found to have intentionally agreed to obstruct the lawful functioning of the USPS. Therefore, the Court cannot dismiss the "fuzzy" charges as legally insufficient, but will remain watchful of the relevance and sufficiency of the evidence. *Tarnopol*, 561 F.2d at 474–75.

The jury will be called upon to decide beyond a reasonable doubt whether the defendants' actions (such as are proven) were the "crafty," "tricky," "dishonest" or "deceitful" means which the defendants agreed to employ in order to impair the integrity of the USPS and its personnel. *See McNally*, 107 S.Ct. at 2881. The Court will have to decide whether the evidence of trickiness, craft, etc. is sufficient to let the case go to the jury. When presented with objects which depend on "craft" or "tricks" the Court will be especially vigilant in determining whether sufficient evidence has been presented to allow the case to go to the jury, or to sustain a conviction.

 D. The defendants also allege that Count I is flawed because it alleges two conspiracies, one involving illegal payments by GAI to Voss, the other involving REI's lawful attempts to get the contract through GAI's efforts. However, Count I is clear that it alleges that defendants knowingly joined in the pre-existing conspiracy between GAI and Voss, and knew of the acts of the other co-conspirators. The government doesn't have to show that defendants joined the conspiracy at its inception, *e.g.*, when Voss and GAI began to work together. *United States v. Sarno*, 456 F.2d 875 (1st Cir.1972). Even if Voss were conspiring with Gnau before REI hired GAI, that doesn't prove two conspiracies are alleged, because it remains possible that REI joined later. Count I charges a single conspiracy to violate statutes *and* to impede the lawful functions of the USPS by multiple and *interrelated* means, for the sole ultimate goal of getting the contract for REI.

 The legal standard for evaluating whether a count contains allegations of more than one conspiracy, (which if found requires dismissal under Rule 7), is to look to the nature of the conspiratorial agreement, focusing on factors such as (1) common goal, (2) nature of the scheme (3) overlapping of participants. *United States v. Becker*, 569 F.2d 951 (5th Cir.1978) *cert. denied*, 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed. 2d 174. Count I clearly alleges that the common goal was getting the contract, that the participants clearly overlapped and that the "nature of the scheme" was to manipulate the procedures of the USPS in any way necessary to achieve the goal.

 Defendants also argue two conspiracies exist because some overt acts alleged aren't criminal taken by themselves, while others are, their argument being that the only "conspiracy" with which these defendants are charged is ordinary lobbying, since all of the overt acts in which their names appear consist of such activities. An overt act, however, does not have to be a crime itself. *United States v. Rabinowich*, 238 U.S. 78, 86, 35 S.Ct. 682, 684, 59 L.Ed. 1211 (1915). The fact that defendants can create a conceptual scheme whereby the overt acts fall into two categories, one of which consists of acts not forbidden by statute, does not demonstrate that more than one conspiracy is alleged.[3] The government will have the burden of proving beyond a reasonable doubt that the defendants' acts, including those which are not in violation of statute, were performed as part of a single conspiracy to impair the integrity of the USPS procurement process.

It is therefore ORDERED that defendants' motion to dismiss Count I of the indictment is DENIED.

## II. Motion for a Bill of Particulars

Defendants also move for a bill of particulars to clarify statements in and legal points concerning the indictment. The

---

**3.** *But see* note 1.

Court grants this motion in part and denies it in part.

The decision whether to order a bill of particulars generally rests in the sound discretion of the Court. *See* Fed.R. Crim.P. 7(f); *United States v. MacDougall,* 790 F.2d 1135, 1153 (4th Cir.1986). Although a bill of particulars may not be used to learn of the government's trial proof, *United States v. Smith,* 341 F.Supp. 687, 690 (N.D.Ga.1972), it may be granted when such a bill is necessary to enable the defendants to understand the charges against them and to defend against these charges. *See, e.g., Russell v. United States,* 369 U.S. 749, 769–770, 82 S.Ct. 1038, 1050–51, 8 L.Ed.2d 240 (1962).

Because of the unusually complicated nature of the indictment in this case and the vagueness of some of the allegations, the Court believes that a limited bill of particulars is necessary to aid both the defendants and the Court in understanding the complex and unusual charges in this case. The government is to submit the information ordered herein to the extent that it has not already been provided. On the other hand, the Court will not order the overly extensive and exhaustive bill of particulars requested by the defendants in Exhibit C of their motion, which essentially would require the government to expose much of its proof before trial.

Accordingly, it is

ORDERED that the government supply within 30 days of this order a list of paragraphs and subparagraphs in the indictment to correspond to the statutes and regulations of which the government contemplates charging violations at trial. This list should state the statute or regulation, followed by the paragraphs and subparagraphs in the indictment stating acts that will be used to prove the alleged violations. Such a list, the Court believes, would not require the government to expose its case before trial, but merely would help inform the defendants of the nature of the charges against them. The Court DENIES the defendants' request for particularization to the extent listed in Exhibit C of their motion. It is further

ORDERED that the government, within 30 days, provide definitions, based on statutes, case law, or other sources, for the following terms used in the indictment:

(1) "normal and regular procurement processes" (Indictment ¶ 3)

(2) "bid rigging" (¶ 12a) (the government also must state which bids are alleged to have been rigged)

(3) "fair and unbiased operational and procurement decisions" (¶ 12a).

(4) "normal, proper and regular procurement procedures and processes" (¶ 13k).

The government must define these terms in the context of USPS rights and the conspiracy alleged in this case. Because the "fuzzy" allegations constitute substantive law in this case, the Court feels that their explanation is necessary to protect the defendants from possibly having to face a case based on crimes without precise definitions. However, the government does not have to particularize other terms that the defendants have requested be particularized in Exhibit C of their motion. It is further

ORDERED that the government identify the names of the persons alleged to have received gratuities, the amount of these gratuities, and the dates of the alleged payments. The Court does not believe that disclosure this information, one of the bases of the alleged conspiracy, will compromise the government's case. It is further

ORDERED that the government identify the gist of the "confidential" information referred to in paragraph 13d of the indictment, who received this information, and when they are alleged to have received it. Similarly, the government is ORDERED to provide the gist of the statements, concealment, and misrepresentations alleged in paragraphs 13hh(6) and 13ii(1)–(10), as well as when and to whom these alleged statements, concealments, and misrepresentations were made. Again, the Court believes that this information is necessary to enable the defendants to effectively understand and defend against the charges, without compromising the prosecution. It is further

ORDERED that the government submit a brief memorandum on the legal method of valuation that it will attempt to use to prove the stolen property charges in Counts Two and Three and an estimate of the valuation of the property using the method or methods stated. This information may be necessary to the defendants' ability to defend against stolen property charges. *See, e.g., United States v. Stevens*, 543 F.Supp. 929, 949 (N.D.Ill.1982) (government required to disclose valuation of allegedly stolen property).

The Court DENIES the defendants' request for further particularization of the indictment because, the Court believes, additional particularization would not be necessary to enable the defendants to understand the charges or prepare their defense, and the request would be overly burdensome to the government.

### III. Motion for Discovery of the Entire Transcript of the Grand Jury Proceedings

 Defendants also have moved, pursuant to federal Rule of Criminal Procedure 6(e)(3)(C)(ii), to discover the entire transcript of the grand jury proceedings. Such a motion may be granted upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. *Id.* The defendants contend that the government may have improperly hid exculpatory evidence and distorted facts to the grand jury. Their request is not merely a fishing expedition, the defendants contend, because of their knowledge of specific examples of the government's misbehavior. The Court DENIES the defendants' motion.

 The Court notes that some of the usual policy reasons for not permitting discovery of the grand jury transcript— such as giving those about to be indicted an opportunity to flee and opening up the possibility for inducements to witnesses [4]—do not exist at this point in a case or in this

particular case. There still exists, however, the general and long-standing policy of keeping secret the names and testimony of grand jury witnesses in order to encourage their open and full cooperation with the grand jury. *See, e.g., Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979). Accordingly, criminal defendants have a heavy burden in proving their need for the grand jury transcript. *See, e.g., id.* at 221, 99 S.Ct. at 1674; *United States v. Woods*, 544 F.2d 242, 250 (6th Cir.1976). Moreover, because of the presumption of regularity in grand jury proceedings, *see, e.g., In re Lopreato*, 511 F.2d 1150, 1152 (1st Cir.1975), criminal defendants are not permitted to discover the grand jury transcript based on a mere suspicion of irregularity. *See, e.g., United States v. Lame*, 716 F.2d 515, 518 (8th Cir.1983). Indeed, defendants must also show a particularized need for all of the transcript that they wish to discover. *See, e.g., United States v. English*, 501 F.2d 1254, 1257 (7th Cir.1974). In the instant case, the defendants *have* specified the grounds on which they base their motion to discover the grand jury transcript—allegations that the government may have improperly hidden evidence or misrepresented facts to the grand jury.

 At the outset, the Court rejects two apparent bases of the defendants' motion. First, because the level of proof necessary to support either a motion to discover the transcript or a subsequent motion to dismiss the indictment is not lowered by anyone's evaluation whether the case is a "close" one on guilt or innocence, the Court believes that such an evaluation should play no role in the Court's decision. Second, the Court notes that the failure of a prosecutor to present all allegedly exculpatory evidence is not on its own a reason to dismiss an indictment. *See, e.g., United States v. Page*, 808 F.2d 723, 727–28 (10th Cir.), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987). If such were the standard, nearly every indictment

---

**4.** *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60

L.Ed.2d 156 (1979).

would be vulnerable to charges that the prosecutor failed to submit each and every scrap of evidence, circumstantial or direct, that arguably could have worked in favor of the defendant. The role of the grand jury is not to determine guilt or innocence, but to determine whether the government has made out a sufficient threshold case of probable cause to go to trial. *See, e.g., United States v. Civella,* 666 F.2d 1122, 1127 (8th Cir.1981). Accordingly, it is appropriate that an indictment may be dismissed only when the prosecutor's misconduct has "substantially influenced the grand jury's decision to indict, or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States,* — U.S. —, 108 S.Ct. 2369, 2374, 101 L.Ed.2d 228 (1988) (citation omitted). This is not to say that the prosecution may hide evidence that clearly negates guilt from the grand jury—it may not. *See, e.g., Page,* 808 F.2d at 727–28. However, an indictment may be dismissed only when the misconduct has clearly infringed on the grand jury's ability to evaluate whether the evidence establishes probable cause. *See Bank of Nova Scotia,* 108 S.Ct. at 2378.

■ Evaluating the defendants' charges of hidden or misleading evidence under this standard, the Court concludes that the defendants are not entitled to discover the grand jury transcript. This conclusion is made primarily because the defendants' allegations, even if true, would not on their own make out a sufficient case to dismiss the indictment and do not raise enough questions about possible misconduct to outweigh the reasons in favor of keeping the grand jury transcript secret. While the Court cannot state here its evaluation of every facet of the defendants' motion, it will mention the four broad areas of prosecutorial impropriety listed by the defendants. First, the defendants allege a failure to provide purported evidence of the defendant's lack of knowledge of the Voss–

Gnau conspiracy. This allegation focuses on the fact that Voss and Gnau may have been willing to testify that they attempted to hide their conspiracy from the defendants and that Frank Bray, an official of defendant REI, may have been willing to testify that he knew nothing of the conspiracy and once heard defendant Reedy ask Gnau whether Gnau knew of any fact that would be embarrassing to defendant REI.[5] Even if these allegations are true, the Court finds that they would be far from sufficient to justify dismissing the indictment; indeed, they are not inconsistent with the facts as presented in the indictment.

Second, the defendants allege that the government misled the grand jury into believing that certain personnel moves at the USPS were related to the alleged conspiracy and hid from the grand jury exculpatory evidence that these moves clearly were not related to the alleged conspiracy. The Court has reviewed the available evidence, including reviewing personnel records *in camera,* and has concluded that the prosecution did not commit misconduct sufficient enough to justify either disclosing the grand jury transcript or dismissing the indictment.

Third, the defendants allege that the prosecution failed to inform the grand jury about facts concerning unindicted co-conspirator William Spartin's alleged conflict of interest when he was hired by the USPS. Primarily, defendants allege that the USPS knew or should of known of Spartin's interest in GAI, and that Spartin had no duty to inform the USPS of this interest. Again, even if the defendants' allegations are true, they do not justify granting the defendants' motion. As for the USPS's knowledge of Spartin's interest in GAI, the government has stated that the letter of March 1985 to the USPS from GAI with Spartin's name on it *was* presented to the grand jury. Moreover, the Court rejects at this time the suggestion that a concept of

---

5. The fact that defendant Reedy and alleged co-conspirator Gnau made apparently exculpatory statements to each other in the presence of an innocent third party is not, the Court believes, evidence that clearly negates guilt, considering that the meeting was held at a time that the government was investigating the conspiracy.

"notice" to the USPS, which might be sufficient to defend in a civil suit brought by the USPS, is enough to exculpate the alleged conspirators from charges of trying to defraud the United States on this point. Finally, the Court believes that the fact that Spartin, who is not a defendant, may not have had a "duty" to disclose his interest in GAI is not significant enough to justify granting the defendants' motion, considering the broad scope of the § 371 allegations.

Finally, the defendants allege that the prosecution misled the grand jury with regard to the purported public nature of the booklet from one of defendant REI's competitors that allegedly was stolen as part of the conspiracy. Evaluating the evidence as presented to the Court, the Court believes at this time that the fact the booklet was made public a few days after the alleged theft is not exculpatory evidence; theft is still theft even if the object stolen is subsequently made virtually worthless by public dissemination. This is especially true with stolen "information," the value of which may depend solely on *when* the information is known.

In sum, the Court concludes that the defendants have not met their burden of proving a need to discover the entire transcript of the grand jury proceedings. Even accepting the defendants' allegations as true, the alleged prosecutorial misconduct was not significant enough, the Court believes, either to justify on its own a motion to dismiss the indictment or to justify granting discovery of the entire grand jury transcript.

*IV. Defendant's Motion to Compel Discovery*

■ Defendants also have moved to compel discovery from the government through Federal Rule of Criminal Procedure 16 and by other rationales. The defendants particularly demand discovery of all exculpatory material, *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963). In this section, the Court concludes that defendants deserve some of the material that they have requested.

Defendants contend that they need extensive discovery to be able to defend against the charges under 18 U.S.C. § 371 of conspiring to corrupt the USPS, including arranging personnel moves to help their effort to win a procurement contract. The Court believes that, in order to defend against the breadth of such charges, the defendants are entitled to considerable additional discovery. *See, e.g., Dennis v. United States*, 384 U.S. 855, 871, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966) (citing trend toward belief that disclosure in criminal cases, as in civil cases, furthers the cause of justice). The government is ordered to make available the material described in this section, to the extent it has not already been disclosed, within 30 days of this order. If the Court does not mention a request of the defendants in this section, it is to be presumed that the request is denied by the Court. If the government continues to have any serious legal objection, not dealt with in this section, to the additional disclosure ordered in this section, it may move for a protective order within 20 days of this order.

#### A. General Matters

First, the government is ORDERED to permit the defense to inspect and copy any material that the government intends to use as evidence, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(C), including those documents that the government has listed as "Government Exhibit" in responses to defendants' requests. Next, because the Court knows of no "public document" exception to the requirements under Rule 16, the government is ORDERED to produce or state as nondiscoverable all materials that the government has labeled as a "Public Document." Similarly, pursuant to the requirements of Rule 16(a)(1)(C), the government must make available material it has listed as "REI material."

#### B. Brady Material

Defendants request any material that is due them under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, which require that

the government give the defense all exculpatory material. The government apparently seeks to limit the *Brady* material in this case to those documents that it believes are significant to defendants' case. The Court, however, believes that a wide range of documents, especially having to do with USPS procurement standards, should be discoverable in order for defendants to effectively prepare their defense against the broad charges of corruption of the USPS.

The government contends that it has given all *Brady* material, and objects to the defendants' attempt to gain impeaching evidence—prior inconsistent statements, criminal records, etc.—by labeling it as *Brady* material. The Court notes, however, that while *Brady* has been construed as to not require the production of all impeaching material, *United States v. Tarantino*, 846 F.2d 1384, 1416–17 (D.C.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988), the *Brady* doctrine does not prohibit the Court from ordering the discovery of such material when justice requires. Accordingly, the Court ORDERS that the government provide evidence that it possesses *regarding criminal records and certain other impeaching evidence* of government witnesses—specifically, respond to Reedy's requests p. 16 ¶¶ 9, 10, 11, and answer whether any witness has ever been convicted of any crime involving credibility and the gist of such criminal records. The government does not, however, have to provide at this time prior inconsistent statements.

Additionally, the Court ORDERS the government to provide to defendants any statements to the effect that the defendants were not involved in, or did not know of, the Voss–Gnau conspiracy. The government's "Attachment D" to its response to the defendants' requests did not clarify whether the government has knowledge or possession of any such statements.

The government also is ORDERED to provide all material that is both *Brady* material, as defined in this order, *and* covered by the Jencks Act, 18 U.S.C. § 3500. The government is not permitted to refuse to disclose *Brady* material merely because it is also *Jencks* material. *See Tarantino,* 846 F.2d at 1414 n. 11.

Defendants also seek a complete list of witnesses that the government intends to call at trial. At the same time the government argues that such a list should be kept secret so as to avoid possible intimidation of witnesses, it also argues that such a list is not necessary because the defendants know of the identities of most of the government's witnesses. Such a list may be ordered on a showing of a "compelling need." *United States v. Madeoy,* 652 F.Supp. 371, 375 (D.D.C.1987). While the Court DENIES the motion to order production of a complete witness list at this time, the Court expects to order the government to provide to defense counsel each day of trial a list of witnesses that are expected to appear at the next day's session of trial.

### C. Requests Regarding General Defenses

Because the alleged replacement of the Postmaster General and other key personnel may turn out to be a crucial issue at trial relating to guilt or innocence, the Court ORDERS the government to provide all material in the government's possession relating to recommendations by third parties that Albert Casey be appointed Postmaster General. The Court also orders the government to provide all materials relating to outside influence or recommendations regarding other key personnel moves—specifically, respond to REI requests p. 12 ¶ 15, p. 13 ¶ 17; Moore p. 21 ¶ 51; Reedy § III, ¶¶ 44, 61, 77, 91.

Moreover, because the charges under 18 U.S.C. § 371 are broad ones alleging that defendants deviated from legal standards regarding procurement, defendants must be granted discovery with regard to these legal standards. The Court ORDERS the government to disclose all material since 1980 relating to the duties and responsibilities of postal officials and relating since 1980 to bid rigging and USPS internal standards—specifically, respond to Reedy requests p. 4 ¶¶ 7, 9; p. 5 ¶ 10, 11, 12.

Defendants also seek information regarding the USPS procurement debate in-

volving defendant REI and other USPS procurement matters, apparently in order to provide a circumstantial defense to charges of conspiracy to corrupt. The Court believes that limited additional disclosure is justified and ORDERS the government to provide all government documents involving the optical character reader and "Zip + Four" debate—specifically, REI requests p. 4 ¶ 10, p. 17 ¶ 48, p. 18 ¶ 56; Moore p. 7 ¶ 17; p. 22 ¶ 60; Reedy p. 6 ¶¶ 23, 30; REI p. 5 ¶ 12(b), p. 17 ¶ 40; Moore p. 7 ¶ 19(b), p. 20 ¶ 47; Reedy p. 4 ¶ 7.

Additionally, the Court ORDERS the government to respond to defendants' requests for information regarding material allegedly stolen from the USPS—specifically, Reedy requests p. 6 ¶¶ 16, 17—but DENIES other requests for information relating to the bids by competitors and relating to sole sources awards by the USPS.

The Court ORDERS the government to provide to defendants the information they seek regarding USPS meetings concerning mail selection procurement, the status of Postmaster General Carlin, and other senior management personnel decisions since 1980, to the extent they are available and have not already been provided—specifically, Reedy requests p. 6 ¶¶ 18, 19, 20, 21, 22. Discussions in these meetings may be highly probative of guilt or innocence.

█ The Court DENIES as overbroad and immaterial defendants' request for additional material regarding USPS contacts with outsiders (documents referred to in footnote 15 of Defendants' Memorandum in support of their discovery motion), DENIES as nondiscoverable defendants' request for material relating to persons interviewed in postal automation investigations (documents referred to in footnote 18 of the memorandum), and DENIES as nondiscoverable under Federal Rule of Criminal Procedure 16(a)(2) defendants' request for the entire USPS Inspection Report of January 1987, except to the extent these materials contain exculpatory *Brady* material.

The Court also DENIES defendants' requests for documents relating to (1) a competitor's notes on a meeting at which "contract splitting" with defendant REI was discussed; (2) a polygraph examination and psychiatric records of William Spartin.

**D. Jencks Material**

█ Statements by government witnesses that are covered by the Jencks Act, 18 U.S.C. § 3500, and that are *not* covered by *Brady* cannot be discovered until trial. This standard is not to be disregarded by a trial court in this Circuit and is not subject to its discretion. *Tarantino*, 846 F.2d at 1414. Accordingly, the Court DENIES defendant's requests to compel discovery of Jencks material that is not also *Brady* material. Finally, the Court agrees with the government that it does not have to confirm the existence of certain material requested by defendant, and refused by the government as Jencks material, as such disclosure would run counter to the purpose and interpretations of the Jencks Act.

**V. Further Proceedings**

The Court will hold a pre-trial hearing for this case on July 11, 1989, at 9:30 a.m., at which time all parties are to provide the Court with proposed special jury verdict forms, proposed voir dire questions, and proposed jury instructions, including legal memoranda supporting such instructions, if appropriate. The Court reaffirms the trial date of September 20, 1989, at 10:00 a.m.