UNITED STATES of America, Appellee

v.

Joseph P. KOLTER, Appellant.

Nos. 95–3009, 95–3017.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 26, 1995.

Decided Dec. 12, 1995.

Jonathan S. Feld, Washington, D.C. argued the cause for appellant, with whom Alan I. Baron, Washington, D.C., was on the briefs.

Leslie A. Blackmon, Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Larry R. Parkinson, Wendy L. Wysong, and Randall D. Eliason, Assistant United States Attorneys, were on the brief.

Before: BUCKLEY, GINSBURG, and HENDERSON, Circuit Judges.

GINSBURG, Circuit Judge:

Former Congressman Joseph P. Kolter was indicted on five counts involving allegations that he used monies from his Official Expenses Allowance to purchase items at the House Stationery Store for his personal use, embezzled public funds by misusing his account at the House Post Office, and thereafter concealed material facts from the Congress by filing false statements with the House Finance Office. He brings this pretrial appeal, arguing that (1) all counts charging him with making false statements under 18 U.S.C. § 1001 should be dismissed in light of *Hubbard v. United States*, —— U.S. ——, 115 S.Ct. 1754, 131 L.Ed.2d 779 (1995); (2) the indictment should be dismissed because his prosecution would violate the Speech or Debate Clause of Article I of the Constitution and with respect to one count would violate the Rulemaking Clause of Article I; (3) the district court should have granted his motion for *in camera* review of grand jury

materials so that he could substantiate his speech or debate claim; and (4) he lacked the notice required by the Due Process Clause of the Fifth Amendment to the Constitution that his conduct was unlawful.

For the reasons set forth below, we do not now rule upon Kolter's challenge to the § 1001 counts. We reject Kolter's other arguments and remand this matter to the district court for further proceedings.

## I. Background

As a Member of Congress, which he was for five terms from 1983 to 1993, Kolter was entitled to use his Official Expenses Allowance for certain expenses he incurred in the conduct of his official duties. As provided in rules promulgated by the Committee on House Administration, reimbursable expenses principally include postage for official mailings and office supplies needed for official purposes. The rules expressly prohibit reimbursement of expenditures for the purchase of gifts or of items for personal or political use.

Three counts of the indictment brought against Kolter involve the House Post Office: One, conspiracy, in violation of 18 U.S.C. § 371; Two, concealing a material fact from the Congress, in violation of 18 U.S.C. §§ 1001 & 2; and Three, embezzlement and conversion of public funds, in violation of 18 U.S.C. §§ 641 & 2. Kolter allegedly conspired with the Postmaster of the House Post Office to embezzle roughly $11,000 by exchanging postage stamps and vouchers for cash. Counts Four and Five, again charging violation of 18 U.S.C. §§ 1001 & 2 and 641 & 2, involve the House Stationery Store (formally the Office Supply Service). Kolter allegedly obtained merchandise valued at more than $33,000 by certifying that the goods were for official use when in fact they were for his personal use or that of his family or friends.

In November 1994 Kolter moved the district court to dismiss the indictment upon three constitutional grounds. First, he argued that the indictment implicates the legislative functions of the Congress and therefore violates the speech or debate clause ("for any Speech or Debate in either House,

[the Senators and Representatives] shall not be questioned in any other place"). Second, he asserted that the indictment infringes upon the power of the House to make its own rules and therefore violates the rulemaking clause ("Each House may determine the Rules of its Proceedings"). Finally, Kolter argued that the due process clause bars his prosecution because the applicable House Rules did not afford him adequate notice that the conduct alleged in the indictment was criminal. In order to facilitate adjudication of his motion to dismiss, Kolter also filed a motion for *in camera* review of grand jury materials.

The district court denied both motions in January 1995. The judge noted that she had rejected virtually identical challenges under the speech or debate and rulemaking clauses in *United States v. Rostenkowski,* Cr. No. 94–0226 (D.D.C. Oct. 14, 1994), a case involving another congressman charged with embezzling money from his expense accounts and making false financial reports to the House Finance Office (formerly the House Disbursing Office) in connection therewith. As to the due process question, the judge said, "Kolter provides no analysis of the allegedly vague House Rules in his brief, and he gives absolutely no explanation as to why use of any particular rule as evidence in this case would violate Due Process." Kolter then filed this interlocutory appeal.

In July 1995—three weeks prior to the date upon which Kolter's opening brief was due in this court—we issued our opinion in the interlocutory appeal in *United States v. Rostenkowski,* 59 F.3d 1291. We held that none of the counts in the indictment in that case presented a problem under the speech or debate clause, but that certain portions of the counts charging embezzlement and conversion were non-justiciable under the doctrine of the separation of powers and the rulemaking clause. We also affirmed the district court's denial of Rostenkowski's motion for *in camera* review of grand jury materials.

The constitutional issues raised in *Rostenkowski* closely parallel the issues that Kolter raises here. Moreover, the charges related

to the House Post Office and the House Stationery Store in the two cases are factually similar, as are the counts alleging that the Congressmen violated 18 U.S.C. § 1001, which prohibits making a false or misleading statement to a "department or agency of the United States." In *Rostenkowski*, 59 F.3d at 1302, we left it to the district court in the first instance to determine whether any of the § 1001 counts survives the decision in *Hubbard*, in which the Supreme Court suggested that the Congress itself is not an "agency of the United States" within the meaning of § 1001, —— U.S. at ——, ——, 115 S.Ct. at 1757, 1761, but reserved the question whether the House Finance Office is such an "agency." *Id.* at —— n. 5, 115 S.Ct. at 1759 n. 5; *see also, United States v. Rostenkowski*, 68 F.3d 489, 489 (1995) *(reh. denied)*. Notwithstanding our remand of the § 1001 issue in *Rostenkowski*, Kolter has sought to expand the scope of this interlocutory appeal by requesting in his brief that we instruct the district court to dismiss the § 1001 allegations against him.

Meanwhile, upon the Government's petition for rehearing in *Rostenkowski* we issued a supplemental opinion reaffirming our view that under *Hubbard* the status of the House Finance Office as an agency of the United States for purposes of § 1001 remains an open question. *Rostenkowski*, 68 F.3d at 490. That opinion issued after the close of briefing but before oral argument in the present case.

## II. Analysis

We address each of Kolter's five challenges to some degree below. In view of our recent decision in *Rostenkowski*, however, we find that only the appellant's argument based upon the rulemaking clause warrants extended discussion. First we attend to a threshold question.

### A. The § 1001 Counts

■ As the United States correctly points out, this court does not now have jurisdiction to order the district court to dismiss the § 1001 counts, as the appellant belatedly requests, upon the basis of the Supreme Court's statutory interpretation in *Hubbard*. Whether such a statutory challenge may properly be the subject of a pretrial appeal— Kolter points to no authority for that proposition—we need not determine, for the challenge is surely out of place in the present case: Kolter never asked the district court to dismiss the § 1001 counts.

■ At the same time, the Government asks that we address the appellant's challenge to the § 1001 counts upon the basis of the speech or debate clause in order to conserve judicial resources and to avoid further delay of the trial in this case. The Government made the same point in seeking rehearing in *Rostenkowski*, and we reject it again for the same reasons. *See* 68 F.3d at 490. We think it would be short-sighted to rule upon the constitutionality of § 1001 as applied to a Member of Congress before the district court determines whether, in light of *Hubbard*, the statute applies to the House Finance Office. *See, e.g., Spector Motor Service, Inc. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944) ("we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable"). As we noted before, the statutory question may well turn upon facts that have not been developed in the record before us. *Rostenkowski*, 68 F.3d at 490. In any event, the status of the House Finance Office has been fully briefed in the district court in the *Rostenkowski* case. Therefore, as we said in denying rehearing in that case, it is unlikely that much in the way of either judicial resources or trial delay could be saved by our resolving the constitutional issues before the district court first passes upon the question, *id.* at 490, and we decline to do so.

### B. In Camera Review of Grand Jury Materials

■ In his opening brief Kolter lists the district court's denial of his motion for *in camera* examination of grand jury materials as one of the "rulings under review." He offers no argument, however, for reversal of that ruling, noting only that he disagrees with our holding on the identical motion in *Rostenkowski*.

Congressman Rostenkowski had argued that the court must look beyond the face of his indictment in order to determine whether it was based in part upon materials that could not properly be used against him under the speech or debate clause. We rejected that proposition and its inroad upon grand jury secrecy because the appellant had not provided "any reason to think that prohibited material was submitted to the grand jury." 59 F.3d at 1313. Neither has Kolter. Therefore, as the appellant apparently realizes, what we said in *Rostenkowski* is equally applicable here.

### C. Due Process

■ Kolter's due process claim is that the House Rules that he allegedly violated are so vague in distinguishing between "official" and "personal" use that he did not have constitutionally adequate notice that his conduct would expose him to criminal liability for converting government funds to his own purpose. In response the Government argues first that the court is without jurisdiction to review this claim in an interlocutory appeal. We agree.

■ Under 28 U.S.C. § 1291, the court of appeals may review only a "final decision" of the district court; a decision is not ordinarily final until a judgment terminating the entire case has been entered. A small class of so-called "collateral orders" issued prior to judgment are deemed final for the purpose of this requirement, however. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). For an order to qualify as collateral and therefore subject to interlocutory appeal under § 1291, (1) the order must fully dispose of the limited question at issue on appeal; (2) the issue must be completely collateral to the cause of action, i.e. independent of the underlying merits; and (3) there must be at stake an important right that would be lost to the appellant if he had to await final judgment before he could get appellate review.

■ Thus, the district court's resolution of a congressman's claim that his impending trial would violate his rights under the speech or debate clause is subject to immedi-

ate appeal lest that constitutional right be lost merely by requiring him to stand trial, regardless of the outcome. That same congressman's claim that the charges against him are brought in derogation of his right (in common with us all) to due process of law will not ordinarily be subject to interlocutory appeal, however; post-conviction review is deemed adequate to vindicate that right. *See, e.g. United States v. Brizendine*, 659 F.2d 215, 222 (D.C.Cir.1981) (court can still "provide effective relief by ordering the indictment dismissed ..., striking any additional charges that were improperly brought against the accused, requiring correction of the sentence, or reversing and remanding for reindictment and a new trial").

Kolter makes no direct reply to the Government's argument that his due process claim is not presently appealable. He states only that it is grounded in the alleged vagueness of the House Rules and therefore merges with his argument based upon the rulemaking clause, which we address fully below. It is not clear whether Kolter believes that some portion of his due process claim is separable from his claim under the rulemaking clause; in any event we take the Government's point as conceded with respect to any such portion and dismiss the due process claim for want of jurisdiction.

### D. The Speech or Debate Clause

In Part II–A we declined to reach the merits of Kolter's claim that the speech or debate clause precludes his being tried for violating 18 U.S.C. § 1001, as alleged in Counts Two and Four of the indictment. Therefore, our discussion of the speech or debate clause here pertains only to Counts Three and Five and to that portion of Count One relating to the conspiracy to commit the illegal acts described in Count Three (as opposed to the conspiracy to commit the § 1001 violations alleged in Count Two).

■ Kolter's claim under the speech or debate clause is totally devoid of legal argument. From the listing in his brief of the "issues presented for review" we infer that he raises three grounds for invoking the protection of that clause: the allegations of

the indictment implicate legislative acts; his prosecution would require him to offer proof of his legislative acts in order to defend himself; and his prosecution would depend upon his "status as a long-time Member of the House of Representatives" (presumably in order to prove his knowledge of House Rules). Kolter asks that we repudiate our decision in *Rostenkowski* to the extent that we there rejected virtually identical arguments upon facts that are indistinguishable for the purpose of the speech or debate clause. *See* 59 F.3d at 1302–04. This panel would be bound by that decision even if we did not agree with it. If Kolter wants to pursue these arguments, therefore, he will have to do so with a higher authority than is convened today.

### E. The Rulemaking Clause

Kolter's appeal under the rulemaking clause pertains to the allegations of embezzlement and conversion of public funds in Count Five of the indictment. The theory of the indictment requires the court to distinguish between "official" and "personal" purchases at the House Stationery Store for which Kolter obtained reimbursement from congressional funds. As in *Rostenkowski*, we must be vigilant to avoid the separation of powers problems that may arise when the court undertakes to fill a gap or resolve an ambiguity in Rules promulgated under the authority of each House to govern its own proceedings. Where "a court cannot be confident that its interpretation is correct, there is too great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone." 59 F.3d at 1306–07.

Kolter relies heavily upon our holding in *Rostenkowski* that certain of the House Rules do not provide a "judicially discoverable and manageable" standard for distinguishing between expenditures for official and for personal purposes. 59 F.3d at 1311. The Government makes three counter-arguments: First, Kolter's alleged use of the Official Expenses Allowance for personal purposes is proscribed by the various annual appropriation acts, which the court can interpret, as it does other statutes, without raising concerns about the doctrine of separation of powers or the rulemaking clause. Second, insofar as any item is to be used as a gift, its purchase is of a type for which reimbursement is specifically prohibited by the Rules. Finally, Kolter's actions are impermissible under Rules not considered in *Rostenkowski*.

Applicable House Rules permit a Member of Congress to charge to his Official Expenses Allowance items purchased at the House Stationery Store that are necessary in the conduct of the Member's official business. The indictment charges that Kolter violated these Rules by using his Allowance to obtain more than $33,000 worth of items that were intended for his personal use or that of his family or friends—including 650 pieces of fine china, 30 pieces of luggage, approximately 40 timepieces, 30 Mont Blanc pens, 40 wooden boxes for playing cards, and two gold necklaces.

In *Rostenkowski* the Congressman was charged, in part, with using his expense allowance to purchase "a variety of valuable consumer goods and gift merchandise . . . to be paid for as supplies necessary for the official use, when in fact the goods he obtained were for the personal use of himself, his family, or his friends." 59 F.3d at 1311 (quoting indictment). We held that insofar as the Government's case depended upon showing that Rostenkowski had purchased items for his personal use, it was non-justiciable, because "without explanation in the Rules that term is too ambiguous to support the prosecution of a Member of Congress." *Id.* "[W]hile the House Rules certainly contemplate a line between the 'official' and the 'personal,' they do little to indicate where that boundary lies." *Id.*

The Government's first argument, as we said, is that this is a straightforward case of statutory interpretation, unassailable under the rulemaking clause: "The edict that a congressman may use the Official Expenses Allowance only for 'official' expenses is not merely a House regulation. It is a statutory limit that Congress has imposed upon itself through the enactment of the annual appropriations acts." In addition, federal statutes

authorize reimbursement of House Members only for "official expense[s]," *see* 2 U.S.C.A. §§ 56 & 122a, notes on "Reimbursement of Expenses of House Members," and provide that appropriated funds "shall be applied only to the objects for which the appropriations were made except as otherwise provided by law." 31 U.S.C. § 1301(a).

The Government maintains that these limitations can be enforced against a Member of Congress through the general prohibition upon embezzlement and conversion of Government property, 18 U.S.C. § 641, without offending the rulemaking clause or separation of powers principles. The Government refers us for authority to our own recent decisions in *United States v. Durenberger*, 48 F.3d 1239, 1245–46 (1995) (false claims statute under which Senator was prosecuted is simply procedural vehicle to enforce provisions of reimbursement statute), and *United States v. Rose*, 28 F.3d 181, 189–90 (1994) (by codifying in statute the disclosure requirements in the House Rules, "Congress has empowered the executive and judicial branches to enforce them").

■ Contrary to the Government's contention, we did consider this argument in *Rostenkowski*. *See* 59 F.3d at 1308–09. There the "Government contend[ed] that the Appropriations Acts and the Handbook [of House Rules] provide a 'judicially discoverable and manageable standard[ ]' for resolving [the] question" whether we could find and apply the line between "personal" and "official" expenses implicit in the statutes and Rules. 59 F.3d at 1309. We determined not merely that the House Rules are ambiguous when applied to certain situations, but that the statutes themselves are no source of clarification; they merely invoke the official versus personal distinction, they do not provide the standard by which it is to be applied. Ordinarily, a court may supply the missing standard based upon the common understanding that would presumably underlie the Congress's use of such terms as "official" and "personal." As we explained in *Rostenkowski*, however, where a criminal statute is to be enforced against a Member of Congress, the rulemaking clause is uniquely a constraint. *See* 59 F.3d at 1306–07; *United*

*States v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981) ("In the absence of any discernible legal standard or even of a congressional policy determination ..., we are loathe to give the False Claims Act an interpretation that would require the judiciary to develop rules of behavior for the Legislative Branch"). The personal versus official distinction is no less elusive, as applied to a Member of Congress, when it appears in a statute than it is in the House Rules themselves; our interpreting the legislative appropriations statutes cited by the Government therefore implicates the separation of powers no less than does our interpreting the House Rules.

The Government's second argument is that in *Rostenkowski* we expressly distinguished "gifts" as a subset of "personal" items, with respect to which the House Rules "could hardly be clearer: funds from the Official Expenses Allowance may not be used to purchase gifts except under clear and limited circumstances." 59 F.3d at 1311. Hence, the Government could prove its case by showing that Rostenkowski used his Official Expenses Allowance to purchase gifts outside the narrow exception provided in the Rules. Here the Government maintains that it should likewise be able to prove Count Five by showing that Kolter charged prohibited gifts to his Official Expenses Allowance.

Kolter protests that "Count Five does not mention the word 'gift.' It clearly states that the items 'were for the personal use of himself, his family, or his friends.'" He contrasts the quoted phrase with the corresponding phrase in Count Four, where it is alleged that Kolter kept the items "for his personal use, or gave them as gifts to personal friends and associates." This syntactical feint is not at all persuasive. First, as noted above, gifts are a subset of personal items, not a third category that coexists with the "official" and "personal" categories. Therefore, a gift could well be included among the items intended "for the personal use of ... [Kolter's] family, or his friends." Indeed, that is an obvious meaning of the term "gift." Second, Count Five incorporates by reference paragraph five of Count Four, which declares that "Kolter caused employees of

the House Stationery Store to complete Special Order Request forms for items that he intended to use as personal gifts, or for other personal purposes." Third, Count Five alleges specifically that Kolter carried out his embezzlement and conversion by causing "a variety of valuable consumer goods and gift merchandise ... to be paid for ... as supplies necessary for his official use, when in fact the goods he obtained were for the personal use of himself, his family, or his friends." This is in all material respects the same charge that we upheld in *Rostenkowski* because it clearly alleges that the Congressman used or intended to use the items purchased as gifts. Therefore, we conclude as we did in *Rostenkowski* that the indictment states a case that the Congressman converted Government funds to his own use by violating the clear House Rule against using the Official Expenses Allowance for the purchase of gifts (outside the limited exception, to which Kolter lays no claim). Accordingly, we reject Kolter's arguments that Count Five should be dismissed.

We now turn to the Government's final argument in order to determine whether Kolter can be tried and convicted upon any ground other than his alleged reimbursement for the purchase of gifts. The Government asserts that certain facts and House Rules not before the court in *Rostenkowski* show that the items Kolter obtained from the House Stationery Store could not have served any "official" purpose, and that the indictment must therefore be understood as alleging that they were for his personal use. *See Rostenkowski*, 59 F.3d at 1310 ("unless we can determine that the facts set out in a particular allegation could not be authorized under any reasonable interpretation of the House Rules, we must find that allegation non-justiciable").

Contrary to an implication in the Government's brief, we do not require the Government to disclose its case prior to trial. What we said in *Rostenkowski* concerning the appellant's challenge based upon the speech or debate clause is equally applicable to a challenge based upon the rulemaking clause: "[P]rior to trial, the Government need show only that the indictment is valid." *Id.* at

1300. In particular, the Government must show that the indictment alleges that the Congressman obtained reimbursement for expenditures to which he could not have been entitled under the House Rules.

The Government may satisfy this burden in either of two ways. First, it may present its charges in sufficient detail to negate the possibility that, if the allegations are proved, the expenditure could still be squared with an "official" use. Second, it may allege conduct that self-evidently violates the Rules under any reasonable interpretation.

As to the first possibility, the Government is well-advised to anticipate in its indictment any vague or obscure terms or provisions in the Rules. Insofar as the Rules are loosely drafted, that may be an onerous and sometimes an impossible task. The remedy for that, of course, rests with the those who draft the Rules and the House that adopts them. Still, pending greater precision in the Rules, the Government may strengthen its hand by adding to the indictment the type of allegations that in this case it has made only in its brief. The Government there reveals, for example, that Kolter neither kept the 650 pieces of fine china, nor used them in his office, nor used them for entertaining at his home or elsewhere—the Government's inference being that he gave at least some of the china away as gifts. Nor, we are told, did he keep the 30 pieces of luggage, nor use them on any official congressional trips during the two-year period over which he acquired them. If these allegations were in the indictment, then the indictment would allege purchases that clearly fall outside the scope of official expenditures under any reasonable interpretation of the House Rules. (We note that Kolter has not even claimed that he used these goods in some way that is arguably consistent with the Rules.) These allegations are not in the indictment, however, and they cannot make valid an otherwise insufficient indictment.

As to the second course—showing that the conduct alleged in the indictment is self-evidently inconsistent with the House Rules governing reimbursements—the Government refers us to a long list of additional, allegedly unambiguous regulations in the *Congression-*

al *Handbook,* of which fully 42 pages deal with the Official Expenses Allowance. Many of these regulations are simply not relevant to our analysis. For example, the Government points to extensive regulations governing expenditures for food and beverages as well as travel in order to document its point that the Rules are imbued with a spirit of frugality utterly inconsistent with a Member's getting reimbursed for the purchase of fine china and luggage. Undoubtedly, the food, beverage, and travel rules do reflect a frugal if not a parsimonious spirit; but (as Grover Cleveland pointed out): "A man has never yet been hung for breaking the spirit of a law."

The Government also, however, refers us to three specific Rules that are highly relevant, and were not invoked in *Rostenkowski.* The Government thereby makes it clear that Kolter's alleged conduct could not be lawful under any rational interpretation of the House Rules.

First, "[n]o Member, relative of the Member, or anyone with whom the Member has a professional or legal relationship may directly benefit monetarily from the expenditure of these allowances." *Handbook* at 2.1. Even if reimbursement for personal items were not separately banned, therefore, this Rule would preclude a Member of Congress from selling any merchandise for which he or she had received reimbursement. Nor could Kolter exchange the merchandise for goods or services of monetary value.

Second, "[e]xpenses incurred in support of the purchase or presentation of trophies or awards, or other items to be given in recognition of personal distinction, *are not reimbursable* from the Official Expenses Allowance." *Handbook* at 2.60 (emphasis in original). This regulation, when combined with the prohibition against reimbursement for the purchase of gifts, suggests that Kolter could not lawfully transfer to another person anything for which he was reimbursed out of his Official Expenses Allowance. He has run afoul of the House Rules, therefore, unless he can show that he kept all of the items for his own use.

Third, the Rules governing the House Stationery Store expressly authorize Members

to obtain reimbursement for two types of items "to support the conduct of the Member's official and representational duties." These types of items are "office supplies" and "stationery supplies." *Handbook* at 2.30–2.31. Conspicuous by their omission are most of the "valuable consumer goods and gift merchandise" enumerated in Count Five of Kolter's indictment. The Government takes the position that the two types of supplies identified in the Rules are exhaustive of the category of official, and therefore reimbursable, purchases that a Member may make at the Store. While that is a plausible reading of the House Rules, the matter is by no means clear. Suppose a Member did purchase luggage exclusively for use on official travel, or china exclusively for serving tea to visitors at his Washington and district offices. Those would be arguably official uses, and the Rule does not clearly preclude reimbursement of those expenditures. That is why we were unable in *Rostenkowski* to say that the "armchairs, luggage, sets of china, and crystal sculptures of the U.S. Capitol" were clearly personal items.

In this case, on the other hand, we have no doubt (and Kolter does not even try to raise any) that the purchases were for a personal rather than an official use. Consider the list in Count Five (incorporated by reference to Count Four):

(a) Approximately forty timepieces, including 14 wristwatches, varying in price from $118.50 to $124.89 each, and 13 Ashby clocks, costing approximately $95 each. . . .

(b) Approximately thirty Mont Blanc pens, ranging in price from $79.50 to $159.50 each. . . .

(c) Approximately 650 pieces of fine china and glassware, costing the United States a total of approximately $21,000 . . . [and including] 48 five-piece place settings of china with 50 matching serving pieces. . . .

(d) Approximately thirty pieces of luggage, costing the United States a total of approximately $2,000. . . .

(e) Two 20-inch gold chain necklaces, costing the United States $220 each . . . [and]

(f) Approximately forty wooden card boxes with a scene of the Capitol on top, costing the United States approximately $28 each....

While one or two clocks, pens, tea sets, suitcases, or perhaps even one or two wooden boxes for cards to be put in the reception area of a congressional office might be deemed a purchase for official use under the House Rules, the quantities of such items involved here are alone enough to show that they were not purchased for official use. Moreover, even were there only one gold necklace or one wristwatch involved, there could be no doubt that it was not bought for any official use.

The particularity of the indictment is critical. Here the Government has identified the type of item purchased, as well as the quantity and price of each item. Having identified Rules that specifically proscribe reimbursement for the purchase of gifts and awards, and the sale or barter of a reimbursed purchase, we have no difficulty in determining that the enumerated purchases could not all qualify for official use under any reasonable interpretation of the House Rules.

### III. Conclusion

Kolter has not shown that his prosecution raises any problem under the speech or debate clause or poses any significant risk, relevant to the rulemaking clause and the separation of powers, that the courts will err in applying the distinction between official and personal uses, as those terms are used in the House Rules, to the facts alleged in the case against him. The Government is clearly entitled to prove, as in *Rostenkowski,* that the purchases in question were used as gifts—a use unmistakably forbidden by the House Rules. Furthermore, the Government has in this case, as it did not in *Rostenkowski,* made allegations in the indictment that under any reasonable interpretation of the House Rules, state a violation of the statutes involved. Kolter has not shown that there is any ambiguity in the Rules by which he could establish an arguably official use for the goods that he acquired—that is, a use consistent with the allegations of the indictment but plausibly reimbursable under the Rules.

For the reasons stated above in Parts II–A, II–B, and II–C respectively, we decline to order that the § 1001 counts against Kolter be dismissed; we uphold the district *court's* denial of his motion for *in camera* review of grand jury materials; and we reject his due process claim. Accordingly, the orders of the district court are in all respects

*Affirmed.*