UNITED STATES of America

v.

**Mary Rose OAKAR, Joseph DeMio.**

Criminal No. 95–0043.

United States District Court, District of Columbia.

March 21, 1996.

Jonathan J. Rusch, Thomas J. Eicher, U.S. Department of Justice, House Bank Task Force, Washington, D.C., for Government.

Stanley M. Brand, David E. Frulla, Brand, Lowell & Ryan, Washington, D.C., for Defendant Oakar.[1]

John J. Ricotta, John J. Ricotta & Associates, Cleveland, OH, for Defendant DeMio.

## OPINION

HAROLD H. GREENE, District Judge.

This case involves charges brought against former Congresswoman Mary Rose Oakar and her nephew, Joseph DeMio. The indictment alleges criminal violations in connection with the 1992 finance disclosure reports submitted by Oakar's re-election committee and alleged violations by Oakar in connection with the so-called House Banking Scandal. Now before the Court are a number of motions to dismiss, for severance, for grand jury disclosure, and for a bill of particulars.

Upon consideration of these motions, the oppositions thereto, the replies, and the entire record, the Court concludes as follows: (1) Counts One and Two will be dismissed; (2) the remaining five counts against Oakar will not be dismissed and will be tried together; (3) Oakar's motion to strike will be grant-

---

1. R. Kenneth Mundy filed the motions and represented defendant Oakar up until May 1995.

ed; and (4) DeMio's separate motions will be denied.

## I

### Oakar Did Not Violate Any Clear House Standard

The first count charges Oakar with the criminal conversion of public funds, in violation of 18 U.S.C. § 641, in that she negotiated an insufficient funds check on her account at the House of Representatives Bank. Oakar claims that this charge suffers from several defects. As one of these—which has to do with a non-existent standard of culpability—is dispositive, the Court need not address the others.

In *United States v. Kolter*, 71 F.3d 425 (D.C.Cir.1995), the Court of Appeals upheld a prosecution for a section 641 conversion of public funds, but in doing so it made statements in the accompanying Opinion which serve to defeat the prosecution here.

Kolter was charged, *inter alia*, with conversion of public funds, the conduct underlying this charge being that Kolter made purchases at the House Stationery Store for which he improperly obtained reimbursement from Congressional funds. *Id.* at 428. The court stated that it had to be determined by reference to the House Rules whether or not the reimbursements were authorized. *Id.* at 431. Kolter moved for dismissal, claiming that the charge was non-justiciable because the House Rules did not provide judicially manageable and discoverable standards to be applied in determining whether his reimbursements were authorized. *Id.*

The Court of Appeals noted that, ordinarily, when a statute does not provide a standard for the Judiciary to follow or an explicit definition of its terms, "a court may supply the missing standard based upon the common understanding that would presumably underlie the Congress's use of such terms." *Id.* at 432. It went on, however, to hold that "where a criminal statute is to be enforced against a Member of Congress, the Rulemaking Clause is a unique constraint." [1]

---

1. The Rulemaking Clause provides:
    Each House may determine the Rules of its Proceedings punish its Members for disorderly

*Id.* To be sustained under the Constitution's Rule–Making Clause, the violation of the House Rules alleged in the indictment must be so clear that the conduct charged constitutes a violation of the Rules "under any reasonable interpretation." *Id.* at 433.

The prosecution cannot meet this test in this case. Oakar's alleged negotiation of a $16,999 insufficient funds check on her Sergeant-at-Arms account is not plainly in violation of the House Rules. As the government conceded at oral argument, there is no House Rule addressing overdrafts on House Bank accounts. Rather, the House Bank's credo was simply to serve the House of Representatives and never embarrass a Member of the House of Representatives. Def. Ex. 5 at 31.

In this connection, the Court of Appeals' ruling in *United States ex rel Joseph v. Cannon* is also instructive. 642 F.2d 1373 (D.C.Cir.1981), *cert. denied,* 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982). In that case, the plaintiff filed a False Claim Act suit against Senator Cannon based on the Senator's authorization of salary payments to an aide who was performing campaign functions, rather than official legislative and representational duties. *Id.* at 1376. The court dismissed the claim, finding that there were no judicially discoverable and manageable standards for resolving the question of whether Senators may use paid staff members in their campaign activities. *Id.* at 1379. In arriving at this decision, the Court of Appeals focused on the fact that the Senate itself had tried, but had been unable, to reach a consensus on the propriety of using staff members in reelection campaigns. *Id.* at 1380–81. The court stated that the history of attempts to develop a suitable rule revealed the lack of a firm standard during the period relevant to the case. *Id.* at 1380. The same is true here.

It is especially noteworthy in this connection that a number of other Members of

Congress cashed more and larger insufficient funds checks on their House Bank accounts and maintained larger insufficient funds balances than did this defendant. *See generally* Def. Ex. 4. In fact, it appears that there were hundreds of other Members who issued overdrafts, *see* Def. Ex. 2 at 35; Def. Ex. 5 at 2, and that Members wrote thousands of dollars worth of overdrafts. *See* Def. Ex. 2 at 2, 10. However, Oakar is the only House Member to be subjected to a felony section 641 charge. The government has failed to give the Court any reason why other House Members, who had overdrafts much in excess of that with which Oakar is charged, have not similarly been prosecuted. While this fact is not ipso facto a defense to the actions of Oakar, it does highlight the critical fact that no clear Rule was in effect regarding overdrafts. Had there been such a Rule, presumably other prosecutions would have been instituted.

As the House has not been able or willing to formulate a Rule regarding overdrafts on House Bank accounts, this Court will not step in to supply the missing element and in effect usurp the House of Representative's authority by imposing a judicially-created rule. Whatever may be the result in an "ordinary" case, as the Court of Appeals noted in *Kolter,* a court must be especially careful not to overstep improper bounds where separation of powers problems are implicated. Said the court:

> Where "a court cannot be confident that its interpretation is correct, there is too great a chance that it will interpret the Rule differently than would the Congress itself; in that circumstance, the court would effectively be making the Rules—a power that the Rulemaking Clause reserves to each House alone."

71 F.3d at 431 (quoting *United States v. Rostenkowski,* 59 F.3d 1291, 1306–07 (D.C.Cir.1995)). On this basis, Count One of the indictment must be dismissed.[2]

Behaviour, and, with the Concurrence of two thirds, expel a Member.
U.S. Const. art. I, § 5, cl. 2.

2. A contrary resolution would tend to contravene the six factors set out in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) which

the Court of Appeals has held serve as a useful checklist of separation of powers concerns. *Vander Jagt v. O'Neill,* 699 F.2d 1166, 1174 (D.C.Cir. 1982), *cert. denied,* 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983). In the instant case, all six factors weigh in favor of dismissal.

## II

*Section 1001 Does Not Apply to Statements Made to the Legislative Branch*

The second count charges Oakar with a violation of 18 U.S.C. § 1001, by the making of a false statement regarding a matter within the jurisdiction of an agency of the United States. More specifically, this count charges that Oakar filed a Financial Disclosure Statement[3] with the Clerk of the House of Representatives in which she omitted reporting some $50,000 in liabilities. With respect to this count, too, a recent appellate decision is directly on point, and it serves to defeat the prosecution's case.

In *Hubbard v. United States*, the Supreme Court ruled that section 1001 does not apply to false statements made in the course of judicial proceedings. —— U.S. ——, ——, 115 S.Ct. 1754, 1765, 131 L.Ed.2d 779 (1995). In the view of the Supreme Court, there is no evidence that Congress intended a court to be a "department" within the meaning of the statute, which covers false statements within the jurisdiction of "any department or agency of the United States." *Id.* —— U.S. at —— —— ——, 115 S.Ct. at 1760–61. The question here, of course, is whether the exclusion from section 1001 of statements by a defendant to the Judiciary also extends to statements made by a defendant to the Legislative Branch.

The Court of Appeals for this Circuit has provided an answer to that question. In *United States v. Dean*, 55 F.3d 640 (D.C.Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996), the court explicitly held that *Hubbard* had "narrowed the reach of § 1001 to matters within the executive branch, a coverage consistent with both the common usage of 'department' and that term's definition in Title 18." *Id.* at 659.

The government seeks to distinguish the instant case from *Dean* in that there the operative term was "department" while here it is "agency." However, in *United States v. Rostenkowski*,—a case involving a charge of making a false statement to an agency—the Court of Appeals stated, referring to *Hubbard*, that "a false statement made to the Congress is not within the ambit of the statute prohibiting false statements to 'any department *or agency* of the United States.' " 59 F.3d 1291, 1301 (D.C.Cir.), *reh'g denied*, 68 F.3d 489 (1995) (emphasis added). In denying rehearing in *Rostenkowski*, the Court of Appeals again noted that "Congress is not a 'department or agency of the United States' within the meaning of 18 U.S.C. § 1001." 68 F.3d at 489.

The government argues that *Rostenkowski* left to the District Court the question of whether charges alleging false statements made to the House Disbursing Office should be dismissed in light of *Hubbard*, and it further contends that the Clerk of the House of Representatives and the House Ethics Committee are "agenc[ies]" because they perform administrative functions. These contentions lack merit. The focus of the Court of Appeals' decisions, as well as of the Supreme Court holding in *Hubbard*, was on the distinction between the Executive Branch—to which section 1001 applies—and the legislative and judicial branches—to which it does not. Although the Court in *Rostenkowski* held that the District Court was not required on remand to find that the House Disbursing Office was not an "agency" within the meaning of section 1001, *see* 68 F.3d at 490, the Court of Appeals decisions themselves all but compel this result.[4]

In any event, this Court concludes that in light of the legislative history as reviewed by *Hubbard*,[5] section 1001 was not

---

3. The submission of such statements is required by the Ethics in Government Act, 5 U.S.C. app. §§ 101–103 (1994). After they are collected, the Clerk delivers these statements to the House Ethics Committee. *Id.* § 103(j)(1).

4. Judge Johnson of this District Court has just ruled in *United States v. Rostenkowski*, No. 94-0226, 1996 WL 342110 (D.D.C. March 12, 1996), on remand that the House Finance Office is not an "agency" within the meaning of section 1001.

5. In particular, the Supreme Court noted:

None of our opinions refers to any indication that Congress even considered whether the 1934 Act [now codified at 18 U.S.C. § 1001] might apply outside the Executive Branch, much less that it affirmatively understood the new enactment to create broad liability for falsehoods in the federal courts. In light of this vacuum, it would be curious indeed if Congress truly intended the 1934 Act to work a

intended to apply to the statements at issue here, which were made to the House Clerk and then forwarded to a Congressional Committee. *See United States v. Hansen,* 906 F.Supp. 688, 695–96 (D.D.C.1995) (statements made to House not chargeable under section 1001); *United States v. Watt,* 911 F.Supp. 538, 542 (D.D.C.1995) (statements made to House subcommittee not chargeable under section 1001). The government's narrow focus on the specific functions performed by various subparts of Congress or of the Judiciary is unavailing. Accordingly, Count Two will be dismissed.

### III

*False Statements Made to the FBI and the Federal Election Commission Violate Section 1001*

Oakar also relies on *Hubbard* with respect to Counts Three and Seven (subpart A below) and Counts Four through Six (subpart B below).

A. Count Three charges Oakar with making a false statement to an FBI agent regarding the delivery of three stop-payment orders to the House Bank. Count Seven alleges that Oakar submitted a letter with a false date to the FBI. In this Court's view, the *Hubbard* rule does not reach so far as to exclude these statements from section 1001's ambit.

■ The FBI is of course an Executive agency, *see United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984), and *Hubbard* therefore does not, by its own terms, shield a defendant from false statements made to the FBI. Oakar counters that the FBI was assisting a grand jury when the FBI agent questioned her, and that the FBI was therefore carrying out a judicial function. To be sure, the Special Counsel secured a grand jury subpoena to the House Sergeant-at-Arms for the account records of Member account holders,

including Oakar's. The House ultimately agreed to provide voluntarily the materials sought by the grand jury subpoena.[6]

After the records had been secured, the FBI reviewed them and interviewed some Members. Oakar made the statement at issue in Count Three during the course of such an interview with an FBI agent. Thereafter, Special Counsel issued a "clearance letter" with respect to several Members who were cleared of wrongdoing, but investigations continued against Oakar and other Members who did not receive clearance letters. Oakar made the statement charged in Count Seven during these subsequent investigations.

■ In the Court's view, these statements are properly chargeable under section 1001 because the investigation was a matter within the "jurisdiction" of an executive "agency." The Supreme Court has held that a criminal investigation falls within the meaning of "any matter," and that the FBI is a "department or agency" of the United States. *Rodgers,* 466 U.S. at 479, 104 S.Ct. at 1946. Furthermore, the Court has held that "the term 'jurisdiction' should not be given a narrow or technical meaning for the purposes of § 1001." *Id.* at 480, 104 S.Ct. at 1946–47 (internal quotations omitted).

Additionally, it is the Court's view that the investigation conducted by the FBI, resulting in the statement made in Count Three, was not an investigation on behalf of the grand jury. That investigation was undertaken in an effort to provide Members with "clearance letters" prior to the 1992 election. The issuance of these letters was not related to the grand jury's functions, but it was an administrative mechanism employed by the Special Counsel to enable a Member to clear his or her name before the election and for the Special Counsel to report various findings and recommendations to the Attorney General. The FBI's investigation was not one

dramatic alteration in the law governing misconduct in the court system *or the Legislature.* —— U.S. at ——, 115 S.Ct. at 1761 (emphasis added).

**6.** However, several House Members challenged the Special Counsel's ability to request such doc-

uments in this court. Chief Judge Penn held that the document subpoena was within the scope of the grand jury's authority. *In re Grand Jury Subpoena,* Misc. No. 92–199, slip op. at 7–10 (D.D.C. May 4, 1992).

carried out under the authority of the grand jury merely because the grand jury initially subpoenaed the documents upon which further investigation by the Special Counsel and the FBI was based.

■ With respect to the statement charged in Count Seven, the Court similarly concludes that there is no basis for determining that this investigation was carried out at the behest of the grand jury. This was a continuing investigation that began with the clearance letter procedure. There was no additional grand jury subpoena, nor is there any indication that the grand jury directed the FBI to continue its investigation. For these reasons, the Court will not dismiss Counts Three and Seven on the basis of *Hubbard.*[7]

B. As indicated, defendants cite *Hubbard* as authority for the requested dismissal of Counts Four through Six. Count Four charges the defendants with a conspiracy to violate section 1001 by concealing from the Federal Election Commission ("FEC") the amounts of various contributions that were made in excess of the maximum amount allowed by law. Count Five charges Oakar with filing statements with the House Clerk that falsely named several individuals as contributors to Oakar's campaign. And Count Six charges Oakar with causing a statement to be filed with the House Clerk that omitted the reporting of at least $5,980 in expenditures. Defendants argue that these counts, involving statements initially submitted to the House Clerk (for eventual transmittal to the FEC), should be dismissed under *Hubbard* because they involve a hybrid legislative-executive scheme. The Court disagrees.

As noted above, the Supreme Court has explained that "jurisdiction" as defined in section 1001 is to be interpreted broadly. It

follows that section 1001 would be applicable to statements made regarding matters over which an executive agency had authority. It is not necessary that the executive agency have exclusive authority, and "[t]here is no implicit requirement that the statements be made directly to, or even be received by, the federal department or agency." *United States v. Gibson,* 881 F.2d 318, 322 (6th Cir.1989); *see United States v. Oren,* 893 F.2d 1057, 1064 (9th Cir.1990). "It is, however, necessary under section 1001 that the false statement involve a matter within federal agency jurisdiction at the time it was made." *Oren,* 893 F.2d at 1064 (emphasis and internal punctuation omitted).

■ Here, the FEC had "jurisdiction" over the financial disclosure statements. The FEC was in no way deprived of jurisdiction simply because, as a matter of housekeeping, the forms were first received by the Clerk of the House rather than by the Commission itself. The Court concludes that *Hubbard* does not require the dismissal of Counts Four through Six.

## IV

### *Scope of Authority of Prosecutors*

Oakar has also moved to dismiss Counts Four through Seven, claiming that the government attorneys exceeded the scope of their commissions. DeMio has presented the same argument with respect to Count Four of the indictment.[8]

Defendants argue that the attorneys who investigated and sought the indictment against Oakar and DeMio were authorized to investigate criminal violations only as they related to the House Bank, and that Counts Four through Seven should therefore be dis-

---

**7.** As an alternative basis to dismiss these counts, Oakar relies on the "exculpatory no" doctrine. This doctrine has neither been accepted nor rejected in this Circuit. *United States v. White,* 887 F.2d 267, 273 (D.C.Cir.1989). Assuming, *arguendo,* that the Court were to decide to adopt it as a general matter, it nevertheless concludes that the doctrine would be unavailable in this case. Oakar allegedly made affirmative misstatements in addition to denying any wrongdoing on her part. A defendant who undertakes such affirmative attempts to mislead government offi-

cials is not entitled to claim the benefit of the doctrine. *See United States v. North,* 708 F.Supp. 364, 369 (D.D.C.1988).

**8.** Oakar's motion argued that Counts Two and Four through Seven were outside the government attorneys' authority. However, as Count Two is being dismissed, the following analysis will address Oakar's arguments only as they apply to Counts Four through Seven.

missed as outside the prosecutors' authority.[9] It is important to recognize at the outset that this issue does not involve the jurisdiction of a special counsel appointed by a three-judge court as to which different considerations may apply. The prosecutor here was appointed as such by the Attorney General. *See infra.*

While United States Attorneys are responsible for the prosecution of all offenses against the United States, 28 U.S.C. § 547(1), the Attorney General is vested with "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice."[10] 28 U.S.C. § 509. An array of statutory provisions vests the Attorney General with both investigative and prosecutorial functions and powers, and authorizes the him to delegate such functions and powers to others within the Department of Justice ("DOJ"), as well as to outside attorneys.[11]

In the instant case, Judge Malcolm Wilkey was commissioned by the Attorney General[12] in March 1992 as Special Counsel to take responsibility for conducting the preliminary review into the House Bank matter. Upon completion of this preliminary inquiry, Judge Wilkey was to report to the Attorney General on what further action, if any, was warranted. *Id.* At oral argument in this case, the government proffered that Judge Wilkey's initial investigation revealed only two possible criminal violations by Oakar, both of which related to the House Bank.[13] Once this initial investigation was complete, Judge Wilkey made his recommendation to the Attorney General, and at that time Judge Wilkey's role in the investigation ended.

In December 1992, the Attorney General directed that DOJ employees who had been assisting Judge Wilkey be assigned to the Public Integrity Section of the Criminal Division of DOJ, where they would continue to operate as the House Bank Task Force. These attorneys were to report to the Deputy Assistant Attorney General through the Chief of the Public Integrity Section. It was the House Bank Task Force which sought the indictment against Oakar and DeMio. Thus, the issue here is whether Counts Four through Seven were within the authority of these attorneys.

When the scope of a DOJ attorney's authority under a special commission is at issue, courts look to writings, guidelines, practices and oral directions transmitted through DOJ's chain of command to determine the extent of the attorney's authority. *See In re Persico,* 522 F.2d 41, 66 (2d Cir. 1975) (28 U.S.C. § 515 "specific direction" to an officer or other full-time employee of DOJ may be embodied in a single written authorization or implied from other writings, guidelines, practices, and oral direction transmitted through a chain of command within the Department); *cf. In re Sealed Case,* 829 F.2d 50, 59 (D.C.Cir.1987), *cert. denied,* 484 U.S.

---

9. Counts Four through Six allege violations in connection with Oakar's 1992 re-election committee's campaign finance disclosure reports. Count Seven alleges that Oakar made a false statement to a FBI agent in violation of section 1001.

10. There are three exceptions to the Attorney General's authority which are not relevant to this case.

11. Pursuant to 28 U.S.C. § 515
   The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings ... which United States attorneys are authorized by law to conduct.
   The Attorney General is also authorized to appoint attorneys to assist United States Attorneys when the public interest requires. 28 U.S.C.

§ 543. In addition, the Attorney General is authorized to "make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." 28 U.S.C. § 510.

12. Malcolm Wilkey, a former judge of the United States Court of Appeals for this Circuit, was not appointed as a special prosecutor by a three-judge court pursuant to 28 U.S.C. § 593, but derived his power directly from the Attorney General.

13. These two possible violations were: (1) Oakar's $16,000 House Bank check for which there were insufficient funds (Count One), and (2) Oakar's statements to the FBI that she had allegedly issued three stop-payment orders on House Bank checks (Count Three).

1027, 108 S.Ct. 753, 98 L.Ed.2d 765 (1988) (authorization under section 515(a) requires specific direction, not a "letter of authority").

The government proffer at oral argument shows that the House Bank Task Force prosecutors presented a prosecution memorandum and a draft indictment to the Public Integrity Section and the Deputy Assistant Attorney General in the Criminal Division for review and comment. These DOJ officials authorized the House Bank Task Force attorneys to obtain the indictment against Oakar and DeMio.

■ In light of the regular internal practices and procedures followed by DOJ in this case, as well as the oversight which senior DOJ officials had with respect to House Bank Task Force activities, the Court concludes that the prosecutors in this case were properly authorized to investigate and prosecute Counts Four through Seven of the indictment.[14]

## V

### Unconstitutionality of Federal Election Commission

Oakar next argues that Counts Four through Six should be dismissed in light of the Court of Appeals' decision in *Federal Election Comm'n v. NRA Political Victory Fund*, 6 F.3d 821, 827 (D.C.Cir.1993), *cert. dismissed*, —— U.S. ——, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994), which held that the composition of the Federal Election Commission violated the separation of powers doctrine and that the FEC was therefore an unconstitutional body. DeMio makes the same argument with respect to Count Four. Defendants argue that they cannot be prosecuted for false statements made to an unconstitu-

tional—and in theory therefore a non-existent agency.[15]

■ The Supreme Court has consistently held that a defendant may not defend against a charge of making a false statement under section 1001 by challenging the agency's authority to request the information. In a line of cases concerning convictions for submitting false statements in violation of section 9(h) of the National Labor Relations Act,[16] the Court held that the unconstitutionality of that provision did not preclude prosecution of individuals under section 1001 who made false statements in response to a request under section 9(h). The reasoning of the Court is equally applicable here:

> The governing principle is that a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioners' fraud. It is not an action to enforce the statute claimed to be unconstitutional.

*Bryson v. United States*, 396 U.S. 64, 68, 90 S.Ct. 355, 358, 24 L.Ed.2d 264 (1969) (quoting *Dennis*, 384 U.S. at 867, 86 S.Ct. at 1847–48). The Court discerns no basis for reaching a different result where the composition of the agency, rather than some other substantive statutory provision, is found to be unconstitutional. Defendants allegedly sought affirmatively to mislead the government, and under the decisions referred to above they therefore cannot defend a section 1001 charge or to a conspiracy to violate section 1001 on the ground that the FEC did not have a constitu-

---

14. Again, this is a different case from one in which the authority of an Independent Counsel appointed under the Ethics in Government Act is at issue. In such a case there would, *inter alia*, be separation of powers concerns not present here.

15. In *Rostenkowski*, the Court of Appeals contemplated that its decision in *NRA Political Victory Fund* might require the dismissal of charges brought under section 1001 "because of the uncertain status of the FEC at the time the statements were allegedly made," but left the issue to

the District Court to resolve on remand. 59 F.3d at 1301–02.

16. This provision required, as a precondition to securing a Labor Board investigation of employee representation or the issuance of a complaint, that each officer of the Union file a non-Communist affidavit swearing that the officer was not a member of or otherwise affiliated with the Communist party or any other organization advocating the overthrow of the U.S. Government. *See Dennis v. United States*, 384 U.S. 855, 857–58, 86 S.Ct. 1840, 1842–43, 16 L.Ed.2d 973 (1966).

tional basis. Accordingly, the Court of Appeal's decision in *NRA* affords them no relief.[17] The motion with respect to Counts Four through Six will therefore be denied.

## VI

### *No Duty to Disclose*

Oakar has also moved to dismiss Count Six of the indictment for failure to charge an offense.

This argument is based on the proposition that a defendant may be held liable under 18 U.S.C. § 1001 on a concealment charge only if she had a legal duty to disclose the facts at the time she was alleged to have concealed them. *See, e.g., United States v. Curran,* 20 F.3d 560, 566 (3d Cir.1994); *United States v. Gimbel,* 830 F.2d 621, 624 n. 2 (7th Cir.1987). In the instant case, it was the treasurer of Oakar's political committee, not Oakar herself, who had the legal duty to disclose the political committee's contributions and expenditures. *See* 2 U.S.C. § 434(a)(1).

■ The argument misses the point. The grand jury's theory of liability is based on 18 U.S.C. § 2(b), the provision of the Code addressing aider and abettor liability, not on 18 U.S.C. § 1001 alone. The indictment alleges that Oakar caused her campaign treasurer to file a false statement with the Clerk of the House of Representatives. Section 2(b) states, "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal." 18 U.S.C. § 2(b). Thus, the indictment is sufficient to charge Oakar with willfully causing another to file the report and thus to make a false statement. *See Curran,* 20 F.3d at 567 (discussing nature of defendant's liability under section 2(b) for section 1001 false statement where

campaign treasurer, not defendant, had duty to disclose information regarding campaign contributions).

Oakar's next contention is that Count Six fails to charge an offense because it does not allege everything the government must prove in order to establish "willfulness" under 18 U.S.C. § 2(b). In support of her argument, Oakar cites the Third Circuit's opinion in *Curran* in which the court stated that the willfulness element of § 2(b) requires the government to prove that the defendant knew of the treasurer's reporting duty, the defendant attempted to frustrate that reporting duty, and the defendant knew that the alleged omission was unlawful. 20 F.3d at 569.

*Curran* addressed, post-trial, the adequacy of jury instructions defining "willfulness," *see id.* at 566–72, not the sufficiency of charges in an indictment.[18] In the present context, the indictment is sufficient in that it charges "willfulness." The motion to dismiss Count Six is hereby denied.

## VII

### *Motion to Strike*

Oakar is charged in Count Four with conspiracy to file false statements within the jurisdiction of the FEC with respect to the 1992 primary and general elections. She moves pursuant to FED.R.CRIM.P. 7(d) to strike the allegations in paragraphs 17, 20v, 20w, and 20x of Count Four of the indictment, arguing that the activities alleged in those paragraphs do not amount to, or provide any indication of, criminal activity, but instead implicate First Amendment rights.[19]

Under FED.R.CRIM.P. 7(d), the Court has discretion to strike an immaterial or irrelevant allegation from an indictment if it is prejudicial to the defendant. FED.R.CRIM.P.

---

17. The Court finds nothing in *Ryder v. United States,* — U.S. —, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995), to compel a different conclusion. There the appointment of members of the body adjudicating defendant's guilt was found to be unconstitutional. *Id.* — U.S. at —, 115 S.Ct. at 2035. Here, the FEC is not adjudicating defendants' guilt or innocence, nor is it prosecuting the case against them.

18. Of course, at trial, the jury will need to be instructed as to what constitutes "willfulness."

19. The Court need not address the issue of whether the alleged acts are exempt from FECA. Even an innocent act may satisfy the overt act requirement of conspiracy, provided that the act furthers the purpose of the conspiracy. *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

7 advisory committee's note. While it is true that FED.R.CIV.P. 7(d) has been strictly construed against striking surplusage, *United States v. Jordan,* 626 F.2d 928, 931 n. 1 (D.C.Cir.1980), it is also true that the challenged paragraphs do allege facts which implicate the protections of the First Amendment. In light of this consideration, as well as of the fact that the indictment contains a multitude of allegations supporting the conspiracy charge, the Court will grant defendant's motion to strike paragraphs 17, 20v, 20w, and 20x of the indictment. However, if it appears at trial that the stricken allegations are relevant to other than First Amendment activities, the Court may permit the government to present evidence on such matters.

## VIII

### *Motion to Sever*

Oakar and DeMio both argue that Counts Four through Seven should be severed from Count Three for purposes of trial.[20]

■ Where multiple defendants are involved, FED.R.CRIM.P. 8(b) governs both joinder of offenses and joinder of defendants. *United States v. Jackson,* 562 F.2d 789, 793 (D.C.Cir.1977). In the case of multiple defendants, multiple offenses may be joined if all the offenses charged were part of the same series of acts or transactions. *Id.* at 794; *United States v. Perry,* 731 F.2d 985, 990 (D.C.Cir.1984).

As noted, Count Three charges Oakar with making a false statement in October 1992 to an FBI agent in which she allegedly told him that she had issued three stop payment orders for checks drawn on her House Bank account. Counts Four through Seven allege violations in connection with Oakar's 1992 reelection committee's campaign finance disclosure reports.

While the government has failed adequately to address this issue in that its arguments touch only upon the relationship between Counts One, Two, and Three, it is evident from the indictment and the various filings that the allegations in Counts Three through Seven constitute a related series of transactions. The alleged activities are all part of an alleged scheme to move money around in order to avoid the requirements of the Federal Election Campaign Act, and to conceal the alleged wrongdoings.

■ Defendants further contend that even if joinder is permissible under FED. R.CRIM.P. 8(b), the Court should grant separate trials under FED.R.CRIM.P. 14. Under Rule 14, a defendant seeking severance must show that joinder will be so manifestly prejudicial that he would not receive a fair trial. *United States v. Treadwell,* 566 F.Supp. 80, 86 (D.D.C.1983).

■ The defendants have failed to meet their burden in this regard. Oakar claims that she will be prejudiced by a joint trial on all charges because as to each count intent will be the critical issue. She is concerned that if the jury finds the requisite intent on one count, it will infer the requisite intent for the other counts. This could be a concern in any case, but proper instructions to the jury will significantly eliminate any such prejudice. DeMio has not presented any arguments as to how he will be prejudiced.

In sum, Oakar and DeMio have failed to show that a joint trial will in effect deprive either of them of a fair trial. The Court will not sever Counts Four through Seven from Count Three.

## IX

### *DeMio's Arguments*

In addition to adopting several of Oakar's arguments for dismissal of Count Four of the indictment (see above), DeMio raises additional points on his own.

■ A. DeMio contends that Count Four fails to charge the mens rea sufficient to support a conspiracy charge.[21] To be

---

**20.** Oakar's motion argues that Counts Two and Four through Seven should be severed from Counts One and Three. As Counts One and Two are being dismissed, the following analysis will

address Oakar's arguments only as they apply to Counts Four through Seven and Count Three.

**21.** DeMio cannot be charged directly under section 1001 because he had no duty to report to the

sufficient, an indictment must (1) contain the elements of the offense charged and inform the accused of the charge against which he must be prepared to defend, and (2) enable the accused to plead former acquittal or conviction under the indictment as a bar to later prosecution for the same offense. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974); *see United States v. Recognition Equip. Inc.*, 711 F.Supp. 1, 4 (D.D.C.1989); *United States v. Whitehorn*, 710 F.Supp. 803, 817 (D.D.C.), *rev'd on other grounds*, 888 F.2d 1406 (D.C.Cir.1989). The indictment states that defendant conspired to "willfully make and caused to be made, a false statement," in that he caused a report to be filed in which false statements were made. Thus, the government has adequately placed defendant on notice that he will have to defend against the charge that he willfully caused another to file the report and thus to make a false statement.[22]

B. DeMio also contends that none of the co-conspirators identified in the indictment was under a duty to report to the FEC, and thus there can be no conspiracy because none of his co-conspirators can be guilty of the underlying offense.

The indictment alleges that DeMio conspired with Oakar and other unnamed individuals to defraud the United States and to cause false statements to be filed with the FEC. A conspiracy prosecution may proceed even where the alleged co-conspirators are immune from prosecution. *United States v. Sangmeister*, 685 F.2d 1124, 1127 (9th Cir.1982). It is not necessary that any co-conspirator be indicted or found guilty. *United States v. Dean*, 59 F.3d 1479, 1490 n. 19 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996); *see*

*United States v. Dakins*, 872 F.2d 1061, 1065 (D.C.Cir.) (conspiracy conviction upheld despite government's dismissal of charges against all co-conspirators), *cert. denied*, 493 U.S. 966, 110 S.Ct. 410, 107 L.Ed.2d 375 (1989). Furthermore, a conspiracy is committed once an agreement is reached and an overt act is completed, regardless of whether the crime agreed on is committed. *United States v. Feola*, 420 U.S. 671, 694, 95 S.Ct. 1255, 1268–69, 43 L.Ed.2d 541 (1975). On this basis, the Court will not dismiss Count Four.[23]

In a similar vein, DeMio argues that certain acts alleged in the indictment to be overt acts in furtherance of the conspiracy are not in themselves illegal, and argues that the indictment, as it relates to legal conduct, must be dismissed. Even an innocent act may satisfy the overt act requirement of conspiracy, provided that the act furthers the purpose of the conspiracy. *Iannelli v. United States*, 420 U.S. at 785 n. 17, 95 S.Ct. at 1293 n. 17; *Whitehorn*, 710 F.Supp. at 841–42.

C. DeMio next argues that the indictment fails to allege the precise time at which he allegedly participated in this conspiracy. In testing the sufficiency of the indictment, the precise time and date are ordinarily not considered to be material. *United States v. Antonelli*, 439 F.2d 1068, 1070 (1st Cir.1971) (per curiam); *see United States v. Covington*, 411 F.2d 1087, 1088–89 (4th Cir.1969) (no material and prejudicial variance where the indictment alleged a date in December, but the facts at trial showed a date in July as the date on which the criminal act was committed). If the time and date are not material elements of the crime, and if the accused was not tried for another similar

---

FEC; that duty rests with campaign treasurers. *See* 2 U.S.C. § 434(a) (1994). But the indictment charges him with conspiring "to knowing and willfully make, and cause to be made, false statements within the jurisdiction of the FEC."

**22.** DeMio's reliance on *United States v. Curran*, 20 F.3d 560 is misplaced. As discussed above, *Curran* is distinguishable from this case because the court there reviewed, post-trial, the adequacy of jury instructions defining "willfulness," *see id.* at 566–72, not the sufficiency of charges in an

indictment. The indictment is not defective for failing to allege the mens rea with more particularity.

**23.** *Gebardi v. United States*, 287 U.S. 112, 53 S.Ct. 35, 77 L.Ed. 206 (1932), does not compel a contrary result. That decision rested on the particular facts of that case and on the construction of the Mann Act, which specifically excluded one of two co-conspirators from the Act's coverage. *Id.* at 119, 123, 53 S.Ct. at 36–38.

crime (such that he will plead former acquittal or conviction), precise dates need not be alleged. *See United States v. Perez,* 67 F.3d 1371, 1376–77 (9th Cir.1995), *reh'g granted,* 77 F.3d 1210 (9th Cir.1996); *Covington,* 411 F.2d at 1089.

The indictment alleges that the criminal acts were committed while DeMio was working for the Oakar campaign from April until November 1992, and into January 1993. In addition, paragraph 20 provides specific dates for certain alleged overt acts. In short, the indictment is not fatally broad for failing to allege the time with more particularity. *See Perez,* 67 F.3d at 1377. Furthermore, the government has made discovery material available to DeMio which will provide him with more specific information about the alleged acts. Thus, DeMio has sufficient notice of the charged offense to prepare to defend himself. *See United States v. Butler,* 822 F.2d 1191, 1193–94 (D.C.Cir.1987).

D. DeMio maintains that the term "defraud" in section 1001 should be narrowly construed [24] and that because his conduct is covered by the more specific provisions of Federal Election Campaign Act ("FECA"), the government must proceed under that provision rather than the more general section 1001. He also argues that the more specific provisions of FECA repealed by implication the more general provision of section 1001.

Arguments similar to these have been rejected by the Fifth Circuit:

> [The argument that defendants should have been prosecuted under FECA rather than Title 18] is meritless. It is well settled that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. The only exception arises where Congress clearly intended that one statute supplant another; the fact that one statute

is more specific than the other is not sufficient. Nor does the fact that one statute prescribes a felony and the other prescribes a misdemeanor affect the prosecutor's ability to choose among statutes.

> There is no indication in the federal election laws that Congress intended them to supplant the general criminal statutes found in Title 18.

*United States v. Hopkins,* 916 F.2d 207, 218 (5th Cir.1990) (internal citations and quotation marks omitted); *see also Curran,* 20 F.3d at 566 (FECA was not intended "to preempt the general criminal provisions under 18 U.S.C. §§ 2(b), 371, or 1001."). Furthermore, the Supreme Court has held that the prosecutor has discretion to chose from available criminal statutes as long as he does not discriminate against any class of defendants. *United States v. Batchelder,* 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2203–04, 60 L.Ed.2d 755 (1979). Thus, there government may lawfully choose to proceed with a prosecution under section 1001 rather than FECA.

E. DeMio next contends that his conduct is punishable as a misdemeanor under FECA, and that the government's decision to prosecute him for a felony under 18 U.S.C. §§ 371, 1001, violates due process and equal protection.

DeMio does not assert that he is a member of a suspect class, nor does he argue that the government premised its decision to prosecute him for a felony charge on an impermissible consideration. *See Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). Equal protection is satisfied if the government's decision survives rational basis review. This standard was met in this case. As explained above, in the absence of a discriminatory purpose, the government has discretion to chose from available criminal statutes.

On his due process claim, DeMio argues that an individual in his position is not on adequate notice that activity having an inci-

---

**24.** DeMio also argues that to prosecute him for "defrauding" the United States, the government must allege that the United States was the "target" of the conspiracy agreement and that the conduct constituted "clear interference and active contact with governmental agency functions." The indictment charges DeMio with conspiring "to defraud the United States, and in particular the FEC." This language sufficiently charges DeMio with the crime of conspiring to violate section 1001.

dental impact on the government can be prosecuted under the more serious sections 1001 and 371, rather than FECA. This contention is also meritless. Efforts to impede reporting requirements are routinely prosecuted under these more serious. provisions. *See Dennis,* 384 U.S. at 860, 86 S.Ct. at 1843–44. Thus, neither the Equal Protection nor the Due Process Clause require the dismissal of Count Four.

■ F. DeMio has moved pursuant to FED.R.CRIM.P. 7(f) for a bill of particulars. In deciding whether a bill of particulars should be compelled, the Court must consider whether the requested information is "necessary to a defendant's preparation for trial and the avoidance of unfair surprise at trial." *Id.*

■ DeMio requests (1) a more detailed factual description of his alleged role in the conspiracies, and (2) the identity of the unnamed co-conspirators referred to in the indictment. The indictment is quite detailed. It provides the date and details of each alleged overt act. The Court finds that a more detailed description of DeMio's alleged role in the conspiracy is not necessary to his preparation for trial. The Court does, however, conclude that it is necessary to DeMio's defense that he be provided with the identities of the unnamed co-conspirators, to the extent that they are known to the government.

■ G. DeMio has moved pursuant to FED.R.CRIM.P. 6(e)(3)(C)(ii) for disclosure of five categories of grand jury materials. Clearly, one category of information requested by DeMio—material exculpatory evidence in the government's possession—must be disclosed to him. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

■ As for the other four categories of requested information, the Court may order disclosure upon "a showing that grounds may

exist for a motion to dismiss the indictment because of matters occurring before the grand jury." FED.R.CRIM.P. 6(e)(3)(C)(ii). The defendant bears a heavy burden with respect to a motion for disclosure of grand jury transcripts. *Recognition Equipment, Inc.,* 711 F.Supp. at 11. A criminal defendant may not be "permitted to discover the grand jury transcript based on a mere suspicion of irregularity;" but rather must "show a particularized need for all of the transcript that they wish to discover." *Id.* Disclosure is appropriate only where the need for it outweighs the public interest in secrecy. *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 443, 103 S.Ct. 3133, 3148, 77 L.Ed.2d 743 (1983); *Recognition Equipment, Inc.,* 711 F.Supp. at 11.

■ DeMio claims that he is seeking disclosure to determine whether the grand jury was properly instructed on the applicable law before returning the indictment. As is set out in detail above, Count Four of the indictment is sufficient to charge an offense. DeMio has failed to make any particularized showing of need for disclosure. Rather, he has simply presented unsupported suspicions of prosecutorial misconduct. As such, his motion will be denied.[25]

### ORDER

For the reasons stated in the Opinion issued contemporaneously with this Order, it is this 21st day of February, 1996,

ORDERED that Oakar's Motion to Dismiss Count One [# 20] be and is hereby GRANTED; and it is further

ORDERED that Oakar's Motion to Dismiss Counts Two and Four through Seven, or in the Alternative to Sever them for the Purposes of Trial [# 19] be and is hereby DENIED; and it is further

ORDERED that Oakar's Motion to Dismiss Count Six and to Strike Certain Portions of Count Four [# 25] be and is hereby DENIED in part as to the motion to dismiss

---

**25.** While DeMio characterizes his concern as pertaining to whether the grand jury was properly instructed on the law, it appears that he is in fact seeking to learn whether there was sufficient evidence to support the indictment. A defendant cannot challenge the sufficiency of the evidence supporting an indictment which is valid on its face. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). As is set out above in great detail, this indictment is valid on its face, and the motion must therefore be denied.

Count Six and GRANTED in part as to the motion to strike portions of Count Four; and it is further

ORDERED that paragraphs 17, 20v, 20w, and 20x be and hereby are stricken from the indictment; and it is further

ORDERED that Oakar's Motion to Dismiss Counts Two through Seven [# 26] be and is hereby GRANTED in part as to Count Two and DENIED in part as to Counts Three through Seven; and it is further

ORDERED that DeMio's Motion to Dismiss the Indictment [# 27] be and is hereby DENIED; and it is further

ORDERED that Counts One and Two of the indictment in the above-captioned case shall be and are hereby DISMISSED; and it is further

ORDERED that DeMio's Motion for Grand Jury Disclosure be and is hereby DENIED [# 17]; and it is further

ORDERED that DeMio's Motion for a Bill of Particulars [# 16] be and is hereby GRANTED in part and DENIED in part; and it is further

ORDERED that the Government provide DeMio with the identities of any known co-conspirators; and it is further

ORDERED that upon the defendants' requests, the Government provide the defendants with material falling within the ambit of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and it is further

ORDERED that the parties appear at 10:00 a.m. in Courtroom One for a status conference on this matter on the 9th day of April, 1996, at 10:00 a.m.