GILMAN, J., delivered the opinion of the court, in which DONALD, J., concurred. COLE, J. (pp. 303-10), delivered a separate dissenting opinion.
OPINION
RONALD LEE GILMAN, Circuit Judge.
The district court granted habeas relief under 28 U.S.C. § 2254 to Jerome West-field Dewald with regard to his state convictions for common-law fraud and larceny by conversion, which arose from Dewald’s diversion of presidential campaign contributions into a bank account that he controlled. In doing so, the court concluded that the Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431 et seq., preempted the state-law basis for those convictions, and that the Michigan Court of Appeals’ determination to the contrary was objectively unreasonable.
Sheriff Gene Wriggelsworth, on behalf of the state of Michigan, contends that the district court erred in granting habeas relief because (1) there is no clearly established federal law, as determined by the Supreme Court, holding that the FECA precludes a state from prosecuting a defendant for committing fraud in the context of a federal election; and (2) even if federal preemption provides “clearly established federal law” in general, the state appellate decision affirming Dewald’s convictions did not unreasonably apply those general principles to the case before it. Because we find the State’s arguments persuasive, we REVERSE the judgment of the district court.
I. BACKGROUND
A. Factual background
During the 2000 presidential election, Dewald established and operated two political action committees (PACs), one called “Friends for a Democratic White House” and the other called “Swing States for a GOP White House.” Dewald, under the pretense of soliciting campaign funds for each PAC, mailed fundraising letters to political donors whose names and addresses appeared on donor lists maintained by the Federal Election Commission.
The PACs collected approximately $750,000 in contributions, but Dewald paid less than 20 percent of that amount to the political parties or to any outside PACs. He instead funneled most of the campaign donations into his own for-profit corporation that provided “consulting and administrative services” to each of the two PACs. The money ultimately flowed into a bank account maintained by Dewald’s consulting firm, or was seized by the State in conjunction with the underlying criminal investigation.
B. State-court procedural history
Dewald was indicted under Michigan law for obtaining money under false pretenses, common-law fraud, and larceny by conversion. A jury convicted him on all counts. He was initially sentenced to concurrent prison terms of 24 to 60 months on Count One (false pretenses); 90 days on Count Two (false pretenses); and 30 to 120 *298 months on Counts Three through Six (fraud and larceny by conversion). The state trial court later resentenced Dewald because of a sentencing miscalculation, which reduced his overall sentence to between 23 and 120 months.
Dewald then appealed his convictions to the Michigan Court of Appeals. He raised a number of claims, including whether the FECA preempts the state-law charges against him. The Michigan Court of Appeals rejected all of his claims. See People v. Dewald, 267 Mich.App. 365, 705 N.W.2d 167, 173 (2005). Regarding Dewald’s preemption claim, the Michigan Court of Appeals reasoned:
Congress stated that the provisions of the Federal Election Campaign Act (FECA) “supersede and preempt any provision of State law with respect to election to Federal office.” 2 USC 453. However, federal courts have held that “ ‘courts have given section 453 a narrow preemptive effect in light of its legislative history.’” Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1280 (C.A.5, 1994), quoting Stern v. Gen. Electric Co., 924 F.2d 472, 475 n. 3 (C.A.2, 1991). Additionally, federal courts have held that Congress did not intend the criminal sanctions of the FECA to be a substitute for all other possible criminal sanctions. United States v. Trie, 21 F Supp 2d 7, 19 (D.D.C., 1998), citing United States v. Hopkins, 916 F.2d 207, 218 (C.A.5, 1990), United States v. Curran, 20 F.3d 560, 566 (C.A.3, 1994), and United States v. Oakar, 924 F.Supp. 232, 245 (D.D.C., 1996), affd in part and rev’d in part on other grounds, 111 F.3d 146, 324 U.S. App DC 104 (1997). Defendant was charged with and convicted of Michigan state-law crimes. These crimes are not specifically preempted by 2 USC 453. Defendant does not cite another portion of the federal statute that specifically preempts a state from pursuing criminal charges when the crimes are brought against a factual background that involves an election. There is also no conflict between state and federal law in this area. Defendant’s convictions for the crimes at issue were not barred by the FECA. Thus, we reject defendant’s federal-preemption argument.
Id. The Michigan Supreme Court subsequently denied Dewald leave to appeal. He then unsuccessfully sought post-conviction relief in state court.
C. Federal habeas petition
After exhausting his state post-conviction appeals, Dewald filed his petition for a writ of habeas corpus in the United States District Court for the Western District of Michigan. Both the magistrate judge and the district court judge agreed that habeas relief should be granted on Dewald’s convictions for fraud and larceny by conversion. This timely appeal by the State followed.
II. ANALYSIS
A. Standard of review
The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2254, et seq., governs Dewald’s petition. AEDPA requires us to deny habeas relief with respect to any federal constitutional claim that was “adjudicated on the merits in State court proceedings” unless the state court’s decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.” Id. § 2254(d).
B. Clearly established federal law
“Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that sup *299 ports a habeas petitioner’s legal argument, the argument must fail.” Miskel v. Karnes, 397 F.3d 446, 454 (6th Cir.2005) (emphasis in original) (internal quotation marks omitted). Identifying clearly established federal law is thus the “threshold question under AEDPA.” Williams v. Taylor, 529 U.S. 362, 390, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In answering this threshold question, we must consult “the holdings, as opposed to the dicta, of [the Supreme] Court’s decisions as of the time of the relevant state-court decision.” Carey v. Musladin, 549 U.S. 70, 74, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (internal quotation marks omitted).
This straightforward AEDPA test is easier to state than apply. The Supreme Court has noted the tension “between applying a rule and extending it” in the determination of clearly established law. Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). For example, the Supreme Court has acknowledged that “if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision.” Id. The Supreme Court has recognized, however, that “[certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.” Id.
This tension is present here, with De-wald arguing that we can apply general standards of federal preemption to this case without exceeding our inquiry under AEDPA. In making this argument, De-wald minimizes the significance of the lack of Supreme Court cases directly addressing FECA preemption. Michigan, in turn, argues that whether the FECA preempts state-court criminal prosecutions is a question that “has not been presented to, let alone answered by, the United States Supreme Court.”
The proper disposition of this case largely turns on how one characterizes the conduct for which Dewald was prosecuted. As viewed by the district court, the Michigan Court of Appeals committed a fundamental error by permitting the State to prosecute Dewald for using a federal candidate’s name to unlawfully solicit campaign contributions from those persons shown on donor lists maintained by the Federal Election Commission. This led the court to conclude that the State’s prosecution of Dewald intruded into areas of the law that were expressly governed by the FECA. Cf. U.S. Term Limits v. Thornton, 514 U.S. 779, 805, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (voiding an Arkansas statute that limited the number of times that a person could run for Congress, with the Court holding that the statute violated the Constitution’s Election Clause by in effect regulating a federal election).
But Dewald’s conduct did not add a new qualification for federal office as in Thornton, nor did his prosecution regulate a federal election or upset the federal-state electoral balance. Rather, Dewald simply used the 2000 presidential election to create an air of legitimacy for his illegitimate objective: to funnel money to his for-profit consulting firm under false pretenses. His prosecution thus reflected the State’s inherent authority to prosecute wrongdoing within its borders. The district court was therefore mistaken when it framed this case as a question of the State attempting to regulate a federal election by prosecuting Dewald.
In addition to mischaracterizing the conduct for which Dewald was prosecuted, the district court found preemption based upon principles distilled from various Supreme Court cases that addressed federal laws other than the FECA. These laws *300 included three separate federal statutes related to food packaging, Jones v. Rath Packing Co., 430 U.S. 519, 534-43, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), the Employee Retirement Income Security Act, Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 108-09, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), and the Clean Water Act, International Paper Co. v. Ouellette, 479 U.S. 481, 491, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987), respectively. Dewald urges us to find clearly established federal law regarding FECA preemption based upon these cases.
But none of these cases addresses whether the FECA preempts state-law convictions for fraud-related crimes, nor has Dewald cited any cases so holding. Indeed, when Dewald was convicted (and even as of the date of this opinion), no Supreme Court case had held that the FECA preempts state-law fraud claims, let alone interpreted the key statutory provisions at issue in this case. Supreme Court cases applying general preemption principles in unrelated circumstances to unrelated statutes do not, by definition, provide clearly established federal law in this case because their holdings do not “squarely address[ ]” preemption in light of the FECA. See Wright v. Van Patten, 552 U.S. 120, 125, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (reversing the grant of habeas relief with regard to a particular exception to the clearly established ineffective-assistance-of-counsel standard because “[n]o decision of this Court ... squarely addresses the issue in this case”).
AEDPA deference counsels against “breaking] new ground” on unsettled legal issues, Williams v. Taylor, 529 U.S. 362, 381, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of Stevens, J.), or interpreting existing caselaw to decide “an open question in our jurisprudence.” Carey v. Musladin, 549 U.S. 70, 76, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (denying habeas relief because “[tjhis Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial” (emphasis added)). Whether the FECA preempts state-law prosecutions like De-wald’s is an open question that the Supreme Court has never addressed. See id. (declining to find clearly established law because, although the Court had generally articulated a defendant’s fair-trial rights, “we have never applied that test to spectators’ conduct”). We therefore find no clearly established federal law in this case.
Our dissenting colleague disagrees, claiming that we are establishing a “bright-line rule [that] could never account for the myriad permutations preemption might take.” Dissenting Op. at 304. But our holding does no such thing. If, for example, a new factual scenario arises under AEDPA in connection with a statute that has previously been addressed by the Supreme Court, we would certainly consider extending those principles to “myriad permutations.” We believe that this conclusion is consistent with the Supreme Court’s pronouncement that “[i]f the rule in question is one which of necessity requires a case-by-case examination of the evidence,” then courts “can tolerate a number of specific applications without saying that those applications themselves create a new rule.” Williams, 529 U.S. at 382, 120 S.Ct. 1495 (internal quotation marks omitted).
But in a case like this, where the Supreme Court has answered none of the relevant legal questions before us, we cannot find clearly established law. The Court, for example, has never discussed the scope of the FECA’s preemption clause, nor has it analyzed the Federal Election Commission’s preemption regulations. This is a classic “open question.” See Carey, 549 U.S. at 76, 127 S.Ct. 649. *301 AEDPA would be “undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.” See Yarborough v. Alvarado, 541 U.S. 652, 666, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).
If we were to apply federal preemption principles in the manner urged by Dewald, we would in effect “create a new rule” because the scope of FECA preemption would be transformed from an open question into a settled principle. This result would be particularly troubling considering the number of other federal courts that have concluded that the FECA does not preempt various state laws. See Janvey v. Democratic Senatorial Campaign Comm., Inc., 712 F.3d 185, 200-01 (5th Cir.2013) (collecting cases from the Second, Fifth, and Eighth Circuits in concluding that the FECA does not preempt a receiver’s attempts under Texas law to recoup fraudulently obtained political contributions); see also Karl Rove & Co. v. Thornburgh, 39 F.3d 1273, 1280-81 (5th Cir.1994) (holding that the FECA does not preempt a state law addressing the financial liability of candidates for the debts of their principal campaign committees). Because no Supreme Court case has held that the FECA preempts state-law fraud claims, Dewald’s convictions did not violate clearly established law under the AEDPA standard.
C. Unreasonable application of clearly established law
Even if we were to apply general preemption principles to the specific facts of this case, we cannot conclude that the Michigan Court of Appeals’ conclusion was unreasonable. “The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.” Yarborough, 541 U.S. at 664, 124 S.Ct. 2140. And in this case we confront the issue of preemption at an expansive level of generality because the Supreme Court has never addressed the FECA in the context of preemption. We therefore ask not whether the state court’s determination was incorrect, but rather whether fair-minded jurists could disagree about whether the state court’s decision conflicts with existing Supreme Court caselaw. See Harrington v. Richter, — U.S.—, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (“[AEDPA] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court’s decision conflicts with this Court’s precedents.”).
Our dissenting colleague makes one bare-bones reference to the fair-minded-jurist standard at the end of his opinion. Dissenting Op. at 310. The dissent instead emphasizes that the Michigan Court of Appeals simply ignored, misapplied, or failed to consider the relevant legal principles. Id. at 303-04, 307-08. But the Michigan Court of Appeals in fact cited cases from our sister circuits that have interpreted the FECA’s preemption clause, discussed the purposes of the FECA, and weighed the competing federal-state considerations. See, e.g., Thornburgh, 39 F.3d at 1280-81. Indeed, the cases cited by the Michigan Court of Appeals directly address the various theories of preemption in the context of the FECA. See id. (holding that “courts have given section 453 a narrow preemptive effect in light of its legislative history” and rejecting an argument based on conflict preemption); see also Stern v. Gen. Elec. Co., 924 F.2d 472, 475 (2d Cir.1991) (opining on the “narrow wording” of the FECA’s preemption clause and rejecting arguments based on field and conflict preemption).
We reserve judgment as to whether the Michigan Court of Appeals’ reliance on these cases was correct, for that is not our inquiry under AEDPA. See Knowles v. *302 Mirzayance, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) (explaining that the correctness of a state court’s decision is not the appropriate inquiry in habe-as proceedings). But we find that the Michigan Court of Appeals’ reliance on these cases was reasonable, particularly considering the lack of guidance from the Supreme Court in the context of FECA preemption. See Yarborough, 541 U.S. at 664, 124 S.Ct. 2140 (“Applying a general standard to a specific case can demand a substantial element of judgment.”).
In addition, the Michigan Court of Appeals’ observation that “courts have given section 453 a narrow preemptive effect in light of its legislative history” is a reasonable one. Under this section, the provisions of the FECA “supersede and preempt any provision of State law with respect to election to Federal office.” Other courts have struggled to define the contours of this language, recognizing that “ § 453 is subject to more than one reading, and the areas preempted may vary with different readings.” Weber v. Heaney, 995 F.2d 872, 875 (8th Cir.1993); see also Reeder v. Kansas City Bd. of Police Comm’rs, 733 F.2d 543, 545 (8th Cir.1984) (“The preemption statute, then, is not so clear (if any statute ever is) as to preclude us from consulting the legislative history.”). If the statute’s reach has puzzled other courts confronting the issue on de novo review, its meaning hardly becomes clearer when viewed through an AEDPA-tinged lens. An ambiguous statute is fertile ground from which fair-minded disagreements grow, and we find that the Michigan Court of Appeals’ narrow construction of the FECA’s preemption provision is a reasonable reading of existing precedent.
The dissent next seeks to do the state court’s work for it, reasoning that had the court undertaken an independent analysis of the FECA’s preemption clause or its accompanying regulations, then preemption would have been found. Dissenting Op. at 307-08. But we cannot conduct “our own independent inquiry into whether the state court was correct as a de novo matter.” Yarborough, 541 U.S. at 665, 124 S.Ct. 2140. And the dissent’s contention that “Congress enacted a broad preemption clause in § 453(a),” Dissenting Op. at 308, is directly contradicted by the Michigan Court of Appeals’ citation to Thorn-burgh, in which the Fifth Circuit concluded that the FECA’s preemption clause has been given “narrow preemptive effect.” Thornburgh, 39 F.3d at 1280. The dissent’s apparent disagreement with Thorn-burgh’s interpretation of the FECA’s preemption clause is precisely the type of fair-minded disagreement that precludes a grant of habeas relief. See Knowles, 556 U.S. at 123, 129 S.Ct. 1411 (holding that the appropriate inquiry under AEDPA is “not whether a federal court believes a state court’s determination ... was incorrect but whether that determination was unreasonable—a substantially higher threshold”) (internal quotation marks omitted).
In addition to the FECA’s preemption clause, we find significant the fact that the regulations promulgated by the Federal Election Commission include a list of state activities and laws that are not preempted by the FECA, the most relevant of which is the “[prohibition of false registration, voting fraud, theft of ballots, and similar offenses.” 11 C.F.R. § 108.7(c)(4) (emphases added). This case does not address “voting fraud” in the traditional sense of someone casting a ballot under false pretenses; instead, it is about the fraudulent acquisition of money by an individual purporting to represent a federally registered PAC. With voting fraud and similar offenses explicitly not preempted *303 by the regulations, we find nothing unreasonable in the decision of the Michigan Court of Appeals to allow Dewald to be prosecuted for obtaining money under false pretenses, common-law fraud, and larceny by conversion.
The dissent, however, contends that our reliance on this regulation is a “red herring.” Dissenting Op. at 308. But its own analysis demonstrates why fair-minded jurists could disagree about the application of 11 C.F.R. § 108.7(c)(4). According to the dissent, run-of-the-mill fraud cannot qualify as a “similar offense[ ]” because it is not “similar in nature” to voting fraud. (Dissenting Op. at 309) Yet reasonable jurists could certainly disagree about whether voting fraud and general fraud are sufficiently similar in nature so that Dewald’s conduct could fall under § 108.7(c)(4). Cf. Cook v. Gralike, 531 U.S. 510, 523-24, 121 S.Ct. 1029, 149 L.Ed.2d 44 (2001) (emphasis added) (internal quotation marks omitted) (explaining that the Elections Clause, found in Article I, Section 4 of the Constitution, grants to states the ability to regulate “notices, registration, supervision of voting, protection of voters, [and the] prevention of fraud and corrupt practices,” among other things). To conclude otherwise would produce a situation in which a state could prosecute voting fraud, but would be left without recourse to punish other fraudulent conduct arising — however tangentially — in the context of a federal election.
Finally, the dissent’s contention that the Michigan Court of Appeals misapplied the presumption against preemption arises from a mischaracterization of ■ this case. Dissenting Op. at 309-10. Neither Dewald through his fraudulent scheme, nor the State by its prosecution of him, attempted to regulate a federal election. Michigan’s decision to prosecute Dewald simply reflects the fundamental principle that states may exercise concurrent jurisdiction to prosecute crimes within their borders. See Tafflin v. Levitt, 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990) (“[T]he States possess sovereignty concurrent with that of the Federal Government, subject only to limitations imposed by the Supremacy Clause.”). We thus conclude that the Michigan Court of Appeals reasonably decided that the presumption against preemption applies in this case.
III. CONCLUSION
For all of the reasons set forth above, we REVERSE the judgment of the district court. Dewald’s petition for a writ of habeas corpus is DENIED.